PEOPLE v ROBERTS

Docket No. 294212. Submitted January 11, 2011, at Grand Rapids. Decided May 10, 2011, at 9:00 a.m. Leave to appeal denied, 490 Mich 893.

Roger D. Roberts was convicted by a jury in the Muskegon Circuit Court of three counts of child sexually abusive activity, MCL 750.145c(2). The court, Timothy G. Hicks, J., sentenced him as a fourth-offense habitual offender to 7 to 22 years in prison for each conviction. Defendant appealed.

The Court of Appeals *held*:

1. The language contained in MCL 722.4(2), which provides that emancipation by operation of law occurs when a minor is legally married, an individual reaches 18 years of age, if the minor is on active duty in the military, or for certain medical purposes when the minor is in the custody of a law-enforcement agency or a prisoner committed to the jurisdiction of the Department of Corrections, is not vague and provides specific criteria that must be met for a minor to be considered emancipated by operation of law. The provision in MCL 750.145c(6) of the child sexually abusive activity statute that states that it is an affirmative defense to a prosecution under the statute that the alleged child is a person who is emancipated by operation of law under MCL 722.4(2) as proven by a preponderance of the evidence provides the applicable burden of proof for the affirmative defense and does not change the criteria that must be proven to show emancipation by operation of law. MCL 750.145c clearly provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited and what circumstances must exist in order for emancipation by operation of law to be applicable. MCL 750.145c provides fair notice of the conduct proscribed. The trial court properly determined that there was no merit to defendant's argument that the statute was unconstitutionally vague.

2. MCL 750.145c(2) is not unconstitutionally overbroad. When, as in this case, the statute adequately defines the prohibited conduct and that conduct bears heavily and pervasively on the welfare of children engaged in the production of child sexually

abusive material, regulation is permissible. When the law provides fair notice of the conduct proscribed and combats the production of materials that depict child sexually abusive activity, the materials do not enjoy the protection of the First Amendment. MCL 750.145c does not impinge on any privacy interest because it does not criminalize consensual sexual activity engaged in by persons between 16 and 18 years of age, but only criminalizes the recording or photographing of such activity.

3. The trial court did not abuse its discretion by determining that the testimony of two law enforcement officers who allegedly violated the court's sequestration order by speaking to each other about the case did not have to be excluded after each officer clearly testified that his testimony was not colored to conform with the testimony of the other.

4. The results of a polygraph examination should only be considered with regard to the general credibility of the examinee, not with regard to the truth or falsehood of any particular statement. Thus, the trial court was entitled to use its discretion in considering defendant's polygraph examination results in weighing defendant's credibility.

5. The evidence does not support defendant's claims that he did not consent to the entry of police officers into his home, that defendant was in the custody of the police when he gave them certain statements and evidence, and that defendant had requested his counsel. The trial court did not err by denying defendant's request to suppress the evidence.

6. The trial court, in sentencing defendant, correctly considered the totality of the circumstances, made no error in scoring the sentencing guidelines, and did not rely on inaccurate information in determining that a downward departure from the sentencing guidelines range was not justified.

Affirmed.

1. CONSTITUTIONAL LAW — STATUTES — NOTICE OF CONDUCT PROSCRIBED.

A statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited in order to afford proper notice of the conduct proscribed.

2. CONSTITUTIONAL LAW — MINORS — EMANCIPATION BY OPERATION OF LAW.

The provisions of MCL 722.4(2) that provide specific criteria that must be met for a minor to be considered emancipated by operation of law are not unconstitutionally vague.

3. Criminal Law — Constitutional Law — Child Sexually Abusive Activity — Persons Emancipated by Operation of Law.

  The statute prohibiting child sexually abusive activity clearly provides a person of ordinary intelligence a reasonable opportunity to know what is prohibited and what circumstances must exist in order for the affirmative defense that the alleged child victim is a person who is emancipated by operation of law to be applicable (MCL 750.145c).

4. Criminal Law — Evidence — Polygraph Tests.

  The results of a polygraph examination should only be considered by a trial court with regard to the general credibility of the examinee and not with regard to the truth or falsehood of any particular statement.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Tony Tague*, Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

*Scott A. Grabel* for defendant.

Before: Sawyer, P.J., and Whitbeck and Wilder, JJ.

Per Curiam. Defendant appeals as of right his convictions by a jury of three counts of child sexually abusive activity, MCL 750.145c(2). Defendant was sentenced as an habitual offender, fourth offense, MCL 769.12, to 7 to 22 years' imprisonment for each of the three convictions. We affirm.

I

Defendant advertised in a newspaper for models. The 17-year-old victim responded to the advertisement, and she and her father met with defendant at his gymnasium. Defendant requested that the victim's parents sign a release stating, "I understand my daughter is under . . . 18 years of age and that my daughter will [be] performing nudity in [an] R- and X-rated capacity." The release, which the parents signed, also provided, "I also

understand that [my daughter] has full permission to make her own decisions and will have our full support." However, defendant advised the victim's parents that no X-rated photographs would be taken of her until she was 18 years old and that any photographs taken beforehand could not be distributed. The victim was "anxious to start the process as quick as possible" so that she could start making money.

Defendant prohibited the victim's parents from attending the photography session scheduled for the day after they signed the release. Rather than photographing her at the gymnasium or the beach, as was the victim's initial understanding, defendant drove her to see his remodeled studio and then took her to his nearby home.

At defendant's home, defendant showed the victim a pornographic magazine and indicated to her that, when nude photographs are taken, "you have to have this kind of attitude." Defendant offered the victim alcohol, but she declined. Defendant subsequently began taking photographs of her—first clothed and then unclothed. The victim testified that she allowed the unclothed pictures because defendant told her that she could earn approximately $18,000 by the time she was 18 years old.

Later in the photography session, defendant "pulled down his pants," "pulled out his penis," and "forced it" into her mouth. Defendant said "this will help you relax and get over your nervousness." Without informing the victim, defendant recorded this sexual act using the video feature on his cellular telephone. The victim testified that she did not want to perform this act, but she did it because she "was scared" and thought it was going to help her modeling career.

The victim testified, "Then he takes the rest of his clothes off and put me on top of him and he makes me

do 69." Next, the victim testified that defendant "wanted to do doggy style." Again, without informing the victim, defendant recorded these acts using the video feature on his cellular telephone. Defendant took additional photographs afterward, and the victim explained that she did not run away because she was scared of defendant, who had told her "he was a black belt," and she was afraid he would not give her a ride home. Although defendant warned the victim not to tell her family what happened, the victim told her mother, who called the police.

II

A

Defendant argues that the statute under which he was convicted is unconstitutionally void for vagueness. He first argues that, in contravention of federal and state principles of substantive due process, MCL 750.145c does not adequately inform the public of the conduct proscribed. Specifically, defendant avers that MCL 750.145c, which provides a defendant with an affirmative defense as long as the defendant proves by a preponderance of the evidence that the child was emancipated by operation of law, is fatally defective. Defendant also argues that MCL 750.145c is overbroad because it infringes on the fundamental right of consenting individuals to engage in recreational or expressive sexual intercourse. Defendant argues that MCL 750.145c cannot survive strict scrutiny because it is a total ban on capturing, by way of video or other media, consensual and otherwise legal sexual acts involving individuals who have reached the age of consent. "The constitutionality of a statute is a question of law, reviewed de novo on appeal." *In re McEvoy*, 267 Mich App 55, 68; 704 NW2d 78 (2005).

"The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *State Treasurer v Wilson (On Remand)*, 150 Mich App 78, 80; 388 NW2d 312 (1986). This Court indicated in *People v Heim*, 206 Mich App 439, 441; 522 NW2d 675 (1994):

> A statute may be challenged for vagueness on three grounds: (1) it is overbroad and impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.

As stated by the Court in *People v Brian Hill*, 269 Mich App 505, 524-525; 715 NW2d 301 (2006):

> In testing a statute challenged as unconstitutionally vague, the entire text of the statute should be examined and the words of the statute should be given their ordinary meanings. Judicial constructions of the statute should also be considered. In general, a criminal defendant may not defend on the basis that a statute is unconstitutionally vague where the defendant's conduct is fairly within the constitutional scope of the statute. Statutes are presumed to be constitutional and are so construed unless their unconstitutionality is clearly and readily apparent. [Citations omitted.]

To afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *People v Sands*, 261 Mich App 158, 161; 680 NW2d 500 (2004).

MCL 750.145c(2) provides:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child

sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

MCL 750.145c(1)(m) defines "child sexually abusive material" as follows:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act . . . .

A "child" is "a person who is less than 18 years of age, subject to the affirmative defense created in [MCL 750.145c(6)] regarding persons emancipated by operation of law." MCL 750.145c(1)(b). MCL 750.145c(6) provides: "It is an affirmative defense to a prosecution under this section that the alleged child is a person who is emancipated by operation of law under section 4(2) of 1968 PA 293, MCL 722.4, as proven by a preponderance of the evidence." According to MCL 722.4(2), emancipation by operation of law occurs under any of the following circumstances:

(a) When a minor is validly married.

(b) When a person reaches the age of 18 years.

(c) During the period when the minor is on active duty with the armed forces of the United States.

(d) For the purposes of consenting to routine, nonsurgical medical care or emergency medical treatment to a minor, when the minor is in the custody of a law enforcement agency and the minor's parent or guardian cannot be promptly located. The minor or the minor's parent shall remain responsible for the cost of any medical care or treatment rendered pursuant to this subdivision. An emancipation pursuant to this subdivision shall end upon the termination of medical care or treatment or upon the minor's release from custody, whichever occurs first.

(e) For the purposes of consenting to his or her own preventive health care or medical care including surgery, dental care, or mental health care, except vasectomies or any procedure related to reproduction, during the period when the minor is a prisoner committed to the jurisdiction of the department of corrections and is housed in a state correctional facility operated by the department of corrections or in a youth correctional facility operated by the department of corrections or a private vendor under section 20g of 1953 PA 232, MCL 791.220g; or the period when the minor is a probationer residing in a special alternative incarceration unit established under the special alternative incarceration act, 1988 PA 287, MCL 798.11 to 798.18. This subdivision applies only if a parent or guardian of the minor cannot promptly be located by the department of corrections or, in the case of a youth correctional facility operated by a private vendor, by the responsible official of the youth correctional facility.

Pursuant to the ordinary language of MCL 722.4, emancipation by operation of law occurs when a minor is legally married, an individual reaches 18 years of age, if the minor is on active duty in the military, or for certain medical purposes when the minor is in the custody of a law enforcement agency or a prisoner committed to the jurisdiction of the Michigan Department of Corrections. *Brian Hill*, 269 Mich App at

524-525. We conclude that this language is not vague, but rather provides specific criteria that must be met for a minor to be considered emancipated by operation of law. MCL 722.4(2); *Sands*, 261 Mich App at 161. We reject defendant's argument that the preponderance-of-the-evidence standard is misleading because it implies that a defendant could present enough evidence to convince a court that the child has been emancipated, such as in this case where the victim's parents signed a release permitting her to engage in adult activities. The preponderance-of-the-evidence standard simply provides the applicable burden of proof—it does not change the criteria that must be proven by a preponderance of the evidence. Hence, MCL 750.145c clearly provides "a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and what circumstances must exist in order for the affirmative defense of emancipation by operation of law to be applicable. *Sands*, 261 Mich App at 161. Accordingly, defendant's challenge that MCL 750.145c does not provide fair notice of the conduct proscribed fails. *Id.* Consequently, the trial court did not err when it concluded that defendant's vagueness argument on this ground was without merit. *People v Beam*, 244 Mich App 103,105; 624 NW2d 764 (2000).

B

Defendant next argues that MCL 750.145c(2) is unconstitutionally overbroad. We disagree. "An overbroad statute is one which is likely to 'chill' constitutionally protected behavior." *People v Hicks*, 149 Mich App 737, 742; 386 NW2d 657 (1986), citing *Broadrick v Oklahoma*, 413 US 601; 93 S Ct 2908; 37 L Ed 2d 830 (1973). But the challenged statute does not hinder any constitutionally protected behavior.

The United States Supreme Court has held that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance" and "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *New York v Ferber*, 458 US 747, 757-758; 102 S Ct 3348; 73 L Ed 2d 1113 (1982). As a result, the Supreme Court held that where the law provides fair notice of the conduct proscribed and combats the production of materials that depict child sexually abusive activity, the materials do not enjoy the protection of the First Amendment. *Id.* at 764. Further, MCL 750.145c does not impinge on any privacy interest because the statute does not criminalize consensual sexual activity engaged in by persons between 16 and 18 years of age, but only criminalizes the *recording or photographing* of such activity. Accordingly, contrary to defendant's arguments, MCL 750.145c is not unconstitutionally overbroad.[1]

C

Next, defendant asserts that the trial court erred when it denied defendant's motion to suppress certain evidence. Defendant argues that he did not freely and voluntarily consent to police officers entering his home during their investigation. In addition, defendant asserts that he was in custody and subjected to interrogation in his home, and that accordingly, there was a

---

[1] Furthermore, none of the circumstances set forth in MCL 722.4(2), which relate to emancipation by operation of law, existed in this case. Defendant does not argue on appeal that his conduct fell outside the confines of MCL 750.145c(2). As set forth by this Court in *Brian Hill*, 269 Mich App at 525, "a criminal defendant may not defend on the basis that a statute is unconstitutionally vague where the defendant's conduct is fairly within the constitutional scope of the statute."

*Miranda*[2] violation when he requested counsel and the officers ignored his request. Defendant also contends that Sergeant Michael Kasher and Officer Jim Davis of the Norton Shores police department admitted violating the sequestration order at the suppression hearing by speaking with each other about the case and asserts on that basis that the trial court should have excluded their testimony. Further, defendant argues that the trial court abused its discretion by giving little weight to the substantial polygraph testimony offered by defendant. Consequently, defendant maintains that all statements made and evidence seized after police officers entered his home should have been suppressed.

We review a trial court's findings of fact during a suppression hearing for clear error, "giving deference to the trial court's resolution of factual issues." *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996). However, we review "de novo the trial court's ultimate decision on a motion to suppress." *Frohriep*, 247 Mich App at 702. We also review de novo whether a defendant was " 'in custody' " at the time the defendant made statements to the police. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001) (citation omitted). "[T]rial courts have discretion to order sequestration of witnesses and discretion in instances of violation of such an order to exclude or to allow the testimony of the offending witness." *People v Nixten*, 160 Mich App 203, 209-210; 408 NW2d 77 (1987) (citations omitted). Thus, we

---

[2] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

review such decisions for an abuse of discretion. *People v Solak*, 146 Mich App 659, 669; 382 NW2d 495 (1985). A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We also review for an abuse of discretion the trial court's consideration of polygraph-examination results in weighing a defendant's credibility. See *People v Cress*, 468 Mich 678, 694; 664 NW2d 174 (2003).

The entry by police officers into a person's home without a warrant and without consent or exigent circumstances is illegal. *People v Dillard*, 115 Mich App 640, 641; 321 NW2d 757 (1982). As stated by the Court in *People v Brown*, 127 Mich App 436, 440-441; 339 NW2d 38 (1983):

> Individuals are constitutionally protected from being subjected to unreasonable searches and seizures. All evidence obtained in violation of this protection is inadmissible in a state court. A warrantless search and seizure is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement. Consent is one such exception. When consent is alleged, the burden is on the prosecution to prove by clear and positive evidence that the consent was unequivocal and specific, freely and intelligently given. Whether a consent is valid is a question of fact to be decided upon the evidence and all reasonable inferences drawn from it. The totality of the circumstances must be examined. . . . Conduct itself can, under proper circumstances, be sufficient to constitute consent. [Citations omitted.]

"[W]hether consent was given is primarily a question of credibility." *Id.* at 443. " '[I]f resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate

these matters.' " *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000) (citation omitted). In addition, a defendant has a right against self-incrimination and to counsel, pursuant to the Fifth Amendment of the United States Constitution, US Const, Am V. In *Miranda*, 384 US at 444, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda* warnings are not required unless an individual is subjected to custodial interrogation. *People v M L Hill*, 429 Mich 382, 384-391; 415 NW2d 193 (1987). In determining whether a person is effectively "in custody," the pertinent inquiry is whether there is restraint on freedom of movement in any significant way such as of the degree associated with a formal arrest. *People v Mayes (After Remand)*, 202 Mich App 181, 190; 508 NW2d 161 (1993). Custody must be determined on the basis of how a reasonable person in the suspect's situation would perceive his or her circumstances and whether the reasonable person would believe that he or she was free to leave. *Id.*; see also

*People v Roark*, 214 Mich App 421, 423; 543 NW2d 23 (1995). Whether an individual is effectively "in custody" is based on the totality of the circumstances. *Roark*, 214 Mich App at 423.

Statements made by a defendant during a custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waived his or her right against self-incrimination. *People v Garwood*, 205 Mich App 553, 555-556; 517 NW2d 843 (1994). Voluntariness is determined by examining the totality of the circumstances surrounding a statement to establish if it was the product of an essentially free and unconstrained decision by its maker. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). Volunteered statements as well as evidence voluntarily given are admissible. *Miranda*, 384 US at 478; *People v Oswald (After Remand)*, 188 Mich App 1, 7; 469 NW2d 306 (1991).

With regard to the sequestration of witnesses, one of "the purposes of the sequestration of a witness is to prevent him from 'coloring' his testimony to conform with the testimony of another." *People v Stanley*, 71 Mich App 56, 61; 246 NW2d 418 (1976). Officer Davis and Sergeant Kasher each clearly testified that their testimony was not colored to conform with the testimony of the other. In light of this record evidence, we conclude that the trial court's decision to not exclude the testimony of Officer Davis and Sergeant Kasher was not outside the range of reasonable and principled outcomes. As a result, the trial court did not abuse its discretion. Furthermore, defendant's argument related to the polygraph examinations is not persuasive. The results of a polygraph examination should only be considered "with regard to the general credibility of the examinee[,] not as to the truth or falsehood of any

particular statement." *People v Barbara*, 400 Mich 352, 413; 255 NW2d 171 (1977). Thus, the trial court was entitled to use its discretion in considering how much weight to give the polygraph examinations. And matters of credibility are best resolved by the trial court. *Sexton*, 461 Mich at 752. Thus, the trial court's decision to give little weight to the polygraph examinations is not outside of the range of reasonable and principled outcomes.

This issue involved disputed factual questions, which turned on the credibility of the witnesses or the weight of the evidence. In such circumstances, this Court " 'will defer to the trial court, which had a superior opportunity to evaluate these matters.' " *Id.* (citation omitted). Here, the trial court ultimately concluded that the officers' version of the events was closer to the truth. The officers testified that defendant's consent to their entry of his home was unequivocal and specific, as well as freely and intelligently given. Their testimony is supported by defendant's conduct—he opened the door further and stepped backward for the officers to enter. In addition, based on the officers' testimony, defendant was not deprived of his freedom of movement in any significant way while the officers were interviewing him. A reasonable person in defendant's position would believe that he was free to leave, and therefore defendant was clearly not in custody. See *Herndon*, 246 Mich App at 395-396; *Mayes*, 202 Mich App at 190. Moreover, the officers testified that defendant never requested his counsel. Because defendant was not in custody and never even requested counsel, there was no *Miranda* violation. In addition, according to the officers, defendant's statements to the police were voluntary and defendant voluntarily gave them the evidence. Thus, defendant's statements and the evidence obtained were admissible, *Miranda*, 384 US at 478; *Oswald*, 188 Mich

App at 7, and the trial court did not err by denying defendant's motion to suppress.

D

Finally, defendant argues that the trial court abused its discretion when it declined to make a downward departure from defendant's sentencing guidelines range on the basis of the mitigating circumstances in the case. The minimum sentencing guidelines were scored at 84 to 280 months' imprisonment on each count. But defendant was sentenced to a minimum sentence of 7 years, or 84 months, on each count. Therefore, defendant was sentenced within the minimum guidelines range. Although there was no downward departure from the guidelines range, the trial court sentenced defendant at the very bottom of the guidelines range. Based on the record before us, the trial court correctly considered the totality of the circumstances and determined that a downward departure from the guidelines range was not justified. Under the circumstances and considering that there was no error in the scoring of the guidelines or reliance on inaccurate information, we affirm defendant's sentence. MCL 769.34(10); *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006).

Affirmed.

SAWYER, P.J., and WHITBECK and WILDER, JJ., concurred.