# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM JAMES MENI,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2015

No. 319627
Marquette Circuit Court
LC No. 13-051171-FC

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of numerous counts of first and second-degree criminal sexual conduct (CSC) for sexually assaulting three young girls—one in 1995, one in 2007, and one in 2012. Defendant challenges the trial court's exclusion of his proffered witness to impeach the latest victim's mother and the court's rejection of his motion to sequester the older two victims during his trial. Neither argument has merit. We therefore affirm.

## I. BACKGROUND

In 2012, Kelly Emanuelson walked into the bedroom of her five-year-old daughter (LI) and found defendant, her longtime friend, performing cunnilingus on the child. Emanuelson telephoned a friend and then the police. Upon learning of the investigation against defendant in relation to this incident, two young women, AQ and AH, came forward and alleged that defendant had similarly assaulted them when they were young.

LI did not testify at trial. Instead, the prosecutor called Emanuelson to the stand to describe the events. Emanuelson informed the jury that LI was not testifying because she did not like to talk. In addition to the assault she witnessed, Emanuelson described how earlier that evening, LI told her, "I really like [defendant], but I just wish he wouldn't lick my butt." The prosecution presented some evidence, however, that tended to reduce Emanuelson's credibility. One officer testified about text messages found on defendant's cell phone suggesting that he and Emanuelson were romantically involved and that defendant had cheated on her.[1] Defense

---

[1] However, the officer also found on defendant's phone images of "Dora the Explorer" (a seven-year-old cartoon character) engaging in sex acts with adult male cartoon characters.

counsel argued that this provided motive for Emanuelson to lie. Further, Emanuelson gave LI a bath immediately after the incident, thereby eliminating any potential DNA evidence.

AQ, who was 14 at the time of trial, testified that defendant and her mother had dated when she was young. She described several incidents during which defendant engaged in digital-vaginal penetration, cunnilingus, fondled her breasts, took pornographic pictures of her, and tried to lure her to perform fellatio. Nine-year-old AQ told her grandmother about the assaults and her grandmother contacted the police. AQ admitted that she minimized events when speaking to the police at that time because her mother was in the room. As a result, no charges were filed contemporaneous with the assault.

AH was 24 years old at the time of the trial. Defendant had a child with AH's mother and lived in their family home in the 1990s, beginning when AH was five and ending when she was eight years old. AH testified that defendant had masturbated in front of her, performed cunnilingus, and had even forced sexual intercourse. AH remained silent about the assaults until 2002, and her mother then reported the incidents to the police. It appears that no charges were filed at that time. Evidence also supported that Emanuelson knew about the allegations against defendant in relation to AH.

Defendant presented 11 witnesses in his defense. The medical professionals who examined LI the day after the alleged assault testified that there was no evidence of any trauma. Moreover, no foreign DNA was found in the child's vaginal area. Defendant also provided character evidence through the testimony of family and friends.

Ultimately, the jury convicted defendant of one count of CSC-1 in relation to LI, three counts of CSC-1 in relation to AH, and two counts of CSC-1 and one count of CSC-2 in relation to AQ.

## II. IMPEACHMENT WITNESS

On direct examination, Emanuelson testified that she had previously heard rumors that defendant had sexually assaulted AH in 1995, but that she still felt comfortable having defendant in her home and around her child. On cross-examination, defense counsel attempted to explore Emanuelson's experience with cases involving child sexual abuse. He queried whether Emanuelson had known anyone other than defendant who had been charged with such an offense. Emanuelson admitted that she had once before gone to the police to report an incident of "criminal sexual conduct"—in 1995—and testified that the prior incident did not involve the current defendant. The court sustained the prosecutor's objection to this evidence "[b]ecause of the remoteness in time."

Despite that the trial court had excluded the evidence that Emanuelson had only known of one individual, other than defendant, who had committed a child sex crime, defense counsel tried to impeach Emanuelson in relation to her testimony. Specifically, at the close of the prosecutor's case-in-chief, defense counsel moved to present Jim Cox as a defense witness. Outside the presence of the jury, defense counsel made an offer of proof that Cox would testify that he is the father of Emanuelson's older child. Cox would further testify that Emanuelson "on at least one occasion has accused him of criminal sexual conduct with his child," but had never reported her

suspicions to the police. Cox described these accusations as false. Defense counsel had not endorsed Cox as a witness, thereby surprising the prosecution at trial. The prosecutor challenged that this evidence "would be impeachment on a collateral matter."

The trial court excluded Cox's testimony. The court acknowledged that Emanuelson's "credibility as a witness is at issue for jury determination" and Cox's information was relevant, to some extent, on that point. The court continued, however, by noting that relevant information may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay." In this regard, the court reasoned:

> The problem I have with admitting Mr. Cox's testimony is that it was a statement allegedly made to Mr. Cox. And if he characterizes it as false, then the jury is left with determining the credibility of Mr. Cox's testimony vis-à-vis that of Ms. Emanuelson's testimony on a set of facts and circumstances that have not occurred within this case, that is, it is not evidence tending to establish or not establish the act of criminal sexual conduct and penetration involving [LI]. And soon, as the prosecution suggested, the prosecutor would then be cross-examining Mr. Cox on the accuracy of his statement that it was false and the jury will be sent down the rabbit hole, so to speak, of trying to determine whether or not Mr. Cox was or was not falsely accused. And, frankly, I think that goes far afield and beyond what this jury has to consider.

The court continued: "And the problem is further compounded by the fact that this was not reported, according to the offer of proof, to anyone else save a statement made to the witness." Accordingly, the court determined that the evidence's relevance was "slight" and was easily outweighed by considerations in favor of exclusion.

Defendant now challenges the trial court's exclusion of Cox's testimony. We review "for an abuse of discretion a trial court's decision to exclude evidence," *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012), and de novo preliminary legal issues such as the interpretation of the rules of evidence. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

At the outset, we note that neither the parties nor the trial court recognized the paramount hurdle to introducing Cox's testimony: the point on which Cox's testimony would have been relevant was not actually part of the evidence. The trial court sustained the prosecutor's objection regarding Emanuelson's prior involvement as an accuser in child sexual abuse cases. Accordingly, this was not a point that could be challenged.

Even if Emanuelson's testimony in this regard had been admitted into evidence, Cox's testimony could not be properly admitted. To be admissible, evidence must be relevant to an issue or fact of consequence at trial. See MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Pursuant to MRE 403, however, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," among other

concerns. While the trial court correctly relied on these rules to consider the propriety of admitting the proffered evidence, the court stopped short of its necessary analysis.

Defense counsel sought to introduce Cox's testimony as *impeachment evidence*. Such evidentiary motions should automatically invoke MRE 608, although defense counsel and the trial court apparently failed to consider this rule. MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

MRE 608(b) codifies a long-held common-law principle: "A witness cannot be impeached by contradiction on matters purely collateral." *Hamilton v People*, 46 Mich 186, 188; 9 NW 247 (1881). And the point at issue in this case—whether Emanuelson had ever previously accused anyone of child sexual abuse—was collateral to whether the abuse occurred in this case. A "collateral fact" is defined as one "not directly connected to the issue in dispute . . . ." *Black's Law Dictionary* (7th ed). Various courts have provided similar, useful definitions. *People v Rodriguez*, 20 Cal 4th 1, 9; 82 Cal Rptr 2d 413; 971 P2d 618 (1999), for example provides, "A collateral matter has been defined as 'one that has no relevancy to prove or disprove any issue in the action.' " This Court has also defined collateral issues in the negative, by explaining the types of issues that are *not* collateral:

> [T]here are three kinds of facts that are not considered to be collateral. The first consists of facts directly relevant to the substantive issues in the case. The second consists of facts showing bias, interest, conviction of crime and want of capacity or opportunity for knowledge. The third consists of any part of the witness's account of the background and circumstances of a material transaction which as a matter of human experience he would not have been mistaken about if his story were true. [*People v Guy*, 121 Mich App 592, 604-605; 329 NW2d 435 (1982).]

The issue here—whether Emanuelson had ever previously accused anyone of child sexual abuse—was not "directly relevant to the substantive issues in this case," i.e. whether defendant sexually assaulted LI. Although a history of making false accusations would be relevant in establishing Emanuelson's *credibility*, it is not a fact "showing bias, interest, conviction of crime and want of capacity or opportunity for knowledge." Emanuelson's alleged prior accusation in a completely unrelated matter also does not affect her "account of the background and circumstances of the material transaction," i.e., the assault of LI. The existence or absence of such prior accusations on Emanuelson's part have no tendency to directly prove or disprove defendant's guilt in this case.

As this issue was collateral, defense counsel was bound to "take the witness's answer" and could not present extrinsic evidence to contradict Emanuelson on this point. See 1

McCormick, Evidence (7th ed), § 49, p 322. Had the trial court overruled the prosecutor's objection and allowed Emanuelson's testimony into evidence, defense counsel could have pressed the witness on the point during cross-examination, and even reminded her "of the penalties for perjury." *Id.* at p 323. But extrinsic evidence in the form of Cox's testimony regarding Emanuelson's prior "false" accusation would not have been permitted.

Accordingly, although the trial court failed to recognize that the challenged point was not in evidence and therefore could not be impeached, and although the court's evidentiary analysis fell short, the court properly excluded Cox's testimony.

## III. WITNESS SEQUESTRATION

Before the start of trial, defendant apparently requested off the record that the court sequester the two witness-victims who would be present at trial so they would not be influenced by the testimony of the other witnesses. The trial court denied defendant's request, again off the record. On the third day of trial, after AH and AQ had testified, defense counsel resurrected this issue. The court reiterated its reason for denying the sequestration request: because crime victims have a constitutional and statutory right to be present during the accused's trial.

Defendant now asserts that he is entitled to a new trial based on the presence of these witnesses in the courtroom throughout the proceedings. Decisions involving the sequestration of witnesses are reviewed for an abuse of discretion. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011). We review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

The Michigan Constitution grants crime victims the right to attend court proceedings against the accused. Const 1963, art 1, § 24 provides in pertinent part:

> (1) Crime victims, as defined by law, shall have the following rights, as provided by law:
>
> * * *
>
> The right to attend trial and all other court proceedings the accused has the right to attend.

To assure enforcement of this constitutional right, the Legislature enacted MCL 780.761, providing:

> The victim has the right to be present throughout the entire trial of the defendant, *unless the victim is going to be called as a witness. If the victim is going to be called as a witness, the court may, for good cause shown, order the victim to be sequestered until the victim first testifies.* The victim shall not be sequestered after he or she first testifies. [Emphasis added.]

The prosecutor argues that to the extent MCL 780.761 permits a court to sequester a crime victim during trial, it is inconsistent with Const 1963, art 1, § 24, and therefore unconstitutional. We need not decide the constitutionality of MCL 780.761 in this case,

-5-

however, as we may decide the issue on nonconstitutional grounds. See *People v Meconi*, 277 Mich App 651, 653; 746 NW2d 881 (2008).

Denial of sequestration in this case was consistent with both the constitution and the statute. "The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another, and to aid in detecting testimony that is less than candid." *Id.* at 654 (quotation marks and citations omitted). Defendant argues that AH and AQ were highly susceptible to conforming their testimony to Emanuelson's since the offenses against them occurred long ago when they were very young and their memories likely had faded. Even if this concern had been legitimate, the trial transcripts reveal that it was ultimately unfounded. Emanuelson testified that defendant engaged in a single act of cunnilingus with young LI. While AQ and AH also described that defendant had performed cunnilingus on them, they additionally testified to various other acts, including fondling, digital-vaginal penetration, penile-vaginal penetration, and taking inappropriate pictures. Like Emanuelson regarding LI, AH recalled one incident in which she awoke in her bed and found defendant performing cunnilingus. This single similarity in the laundry list of events recalled by AH is too insignificant to conclude that AH "colored" her testimony. Accordingly, we discern no error in the trial court's refusal to sequester AH and AQ.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto