# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID FRANKLIN MCNEES, JR.,

Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 337426
Kalamazoo Circuit Court
LC No. 2010-001165-FC

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON , JJ.

PER CURIAM.

Defendant appeals as of right the January 17, 2017 amended judgment of sentence, which was entered to reflect that his sentence included lifetime electronic monitoring under MCL 750.520n. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2010, defendant was found guilty by jury of three counts of first-degree criminal sexual conduct, (CSC-I), MCL 750.520b(1)(b) (victim was at least 13 but less than 16 years of age and defendant was related to the victim). The victim, defendant's step-daughter, testified that defendant began sexually assaulting her when she was 13 years old. She further testified that he, as well as other men he introduced her to, assaulted her for almost a year. On January 28, 2011, the trial court sentenced defendant as a habitual offender, MCL 769.10, to a term of 356 months' to 55 years' imprisonment. Defendant's presentence investigative report contained the recommendation that defendant's sentence was subject to lifetime electronic monitoring under MCL 750.520n, and at sentencing, the trial judge ordered defendant, without objection, to statutorily mandated lifetime electronic monitoring. However, the judgment of sentence did not indicate that defendant was to be subject to lifetime electronic monitoring. Defendant appealed as of right, and he did not raise any issue relating to lifetime electronic monitoring. Instead, he raised a number of claims that included ineffective assistance of counsel, prosecutorial misconduct, and evidentiary challenges. His conviction and sentence were affirmed. *People v McNees*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2012 (Docket No. 302348), p 8.

On January 17, 2017, the trial court, after being advised of an error by the Michigan Department of Corrections (MDOC), amended the judgment of sentence to reflect its order at sentencing to impose the statutorily mandated lifetime electronic monitoring. In response, on

-1-

April 27, 2017, defendant, acting *in propria persona*, filed a motion for new trial and a *Ginther*[1] hearing. Defendant, however, did not challenge the trial court's amendment to the judgment of sentence. Instead, he argued that because the trial court effectively entered the first and only valid judgment of sentence, he could raise any trial-related claims—even those that were already addressed in the 2012 appeal. Thus, defendant again claimed he was entitled to a new trial because he was actually innocent under the actual innocence standard, he had been denied his constitutional right to a fair trial due to prosecutorial misconduct, trial counsel was ineffective, and he was denied the equal protection of the law because other acts evidence under MCL 768.27a was improperly admitted. On May 30, 2017, the trial court entered an order denying the motion and explaining that defendant could not challenge the verdict. Moreover, because no new issues had been raised in the motion for a new trial, the trial court was bound to follow this Court's previous ruling under the law of the case doctrine. Appellate counsel was appointed to represent defendant in his appeal of the entry of the January 17, 2017 amended judgment of sentence.

On appeal, defendant filed a Standard 4 brief challenging the trial court's denial of the motion for a new trial. Defendant first claims the trial court erred because it misapplied the court rules governing motions for a new trial and refused to address the underlying trial-related claims in defendant's motion. According to defendant, the initial judgment of sentence was invalid because it failed to include lifetime electronic monitoring, and because the amended judgment of sentence is the first valid judgment, he is entitled to raise all claims arising from the conviction and sentence. Thus, defendant raises the several claims already addressed in his initial appeal to this Court, including ineffective assistance of counsel, prosecutorial misconduct, and the denial of a right to a fair trial based on the introduction of other acts evidence. Additionally, appellate counsel makes the single claim that lifetime electronic monitoring is unconstitutional because it constitutes cruel and unusual punishment under the United States Constitution and cruel or unusual punishment under the Michigan Constitution.

## II. STANDARD 4 BRIEF

Defendant argues that the trial court should have granted his motion for a new trial. We disagree.

"This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion." *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). An abuse of discretion occurs "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Defendant does not challenge the validity of imposing lifetime electronic monitoring. Therefore, we do not address this issue. Instead, defendant claims he may raise issues in his motion for a new trial that were already addressed in a previous appeal because the trial court validated the previously invalid judgment of sentence. This argument is without merit.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

A trial court may correct an invalid sentence, but it may not modify a valid sentence after it has been imposed except as provided by law. MCR 6.429(A). "A sentence is invalid when it is beyond statutory limits, when it is based upon constitutionally impermissible grounds, improper assumptions of guilt, a misconception of law, or when it conforms to local sentencing policy rather than individualized facts." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997) (citation omitted). In *People v Comer*, 500 Mich 278, 560 n 35; 901 NW2d 553 (2017), our Supreme Court held that the defendant's sentence was invalid because it was based on a misconception of law, i.e., it did not include the statutorily mandated punishment of lifetime electronic monitoring. Defendant relies on *Comer* to argue that his original sentence was invalid because it did not include lifetime electronic monitoring, and therefore, he is allowed to raise all trial-related claims after the valid amended judgment of sentence was entered. We agree that defendant's original judgment of sentence was invalid because the trial court failed to include lifetime electronic monitoring. However, the remainder of defendant's argument is meritless.

We decline to consider defendant's claims that were previously disposed of by this Court or that could have been raised in his appeal as of right following the jury trial. Consideration of issues previously raised is barred under the law of the case doctrine, which precludes a different ruling on legal issues that this Court has already addressed.[2] *People v White*, 307 Mich App 425, 428-429; 862 NW2d (2014). Additionally, "failure to comply with the timing requirements for an appeal as of right deprives this Court of jurisdiction to consider the appeal as of right." *Chen v Wayne State Univ*, 284 Mich App 172, 193; 771 NW2d 820 (2009); see also *People v Cross*, 30 Mich App 326, 347; 186 NW2d 398 (1971) ("It cannot be disputed that defendant has, by reason of his failure to take a timely appeal, lost his right to an appeal as of right."). The subsequent entry of an amended judgment of sentence did not reset the clock or revive the ability to appeal as of right and raise trial-related claims. In fact, the Michigan Court Rules provide procedures when a party may challenge an invalid sentence after an appeal. See MCR 6.429(B)(1)-(4) (providing procedures for challenging the validity of a judgment after a claim of appeal has been filed). Nothing in the court rules nullifies the previous claim of appeal simply because a judgment is rendered invalid. The trial court did not err when it denied defendant's motion for a new trial.

We note that this Court, on its own initiative, could consider whether the trial court had the authority to amend the judgment of sentence six years after it was entered. However, we decline to do so because the issue has not been properly raised on appeal. *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). Even if we did address this argument, it would fail. In *Comer*, the defendant pleaded guilty to CSC-I and second-degree home invasion, but he was *never* advised that his sentence was subject to lifetime electronic monitoring. *Comer*, 500 Mich at 555-556. The MDOC notified the trial court of the omission, and after a hearing, the trial

---

[2] Defendant alleges that this appeal permits this Court to reconsider claims that he is actually innocent of CSC-I because the victim testified she had contracted a sexually transmitted disease from him, and he did not test positive for a sexually transmitted disease; that the prosecutor committed misconduct and withheld a co-defendant's criminal history, which deprived defendant of valuable impeachment evidence; that defense counsel was ineffective; and that evidence under MCL 768.27a was improperly admitted.

court ruled that the defendant's plea was defective and gave the option of allowing defendant to either withdraw the plea or allow the plea to stand while acceding to lifetime electronic monitoring. *Id*. at 556. The defendant declined to withdraw the plea, and the trial court entered a new judgment of sentence that included lifetime electronic monitoring. *Id*. On appeal, our Supreme Court explained that a clerical mistake could be corrected on a trial court's own initiative, even after a judgment was entered. However, "the court's ability to correct substantive mistakes under MCR 6.435(B) ends upon entry of the judgment." *Comer*, 500 Mich at 561-562. The *Comer* Court also explained that MCR 6.429 governed the modification of invalid sentences and "is best read as requiring a party to file a timely motion before a court may correct an invalid sentence upon which judgment has already entered." *Comer*, 500 Mich at 562-563. Under the circumstances in *Comer*, the trial court had erred when it amended the defendant's judgment of sentence to include lifetime electronic monitoring because the defendant was never informed of it before he accepted the plea and was sentenced; therefore, the error was substantive and could not be corrected on the trial court's own initiative. *Id*. at 555, 561, 564.

In this case, unlike in *Comer*, defendant was properly informed that his sentence included lifetime electronic monitoring. His presentence investigation report noted that he was subject to lifetime electronic monitoring, and the trial court stated on the record at sentencing that defendant would be subject to lifetime electronic monitoring. Our Supreme Court expressly noted, in analyzing whether the mistake at issue was clerical or substantive, that "the original sentencing judge said nothing about lifetime electronic monitoring." *Id*. at 561. In this case, defendant was well aware that he was subject to lifetime electronic monitoring, and the trial court's correction was ministerial in nature. Therefore, the correction of the judgment of sentence was not substantive, and the trial court was allowed, at any time, to amend the judgment of sentence and include the mandatory lifetime electronic monitoring. *Id*. ("[A] court may correct a clerical mistake on its own initiative at any time, including after a judgment has entered."). Moreover, the 1989 Staff Comment to MCR 6.435 states that a court may correct "an inadvertent error or omission in the record, or in an order or judgment," and an example of when a clerical error occurs is when "the judge misspoke or the clerk made a typing error." In this case, the trial court ordered defendant to lifetime electronic monitoring on the record, but the box was not checked on defendant's judgment of sentence. This type of clerical mistake is correctable under MCR 6.435(A).

### III. CRUEL OR UNUSUAL PUNISHMENT

Defense counsel argues that the sentence of lifetime electronic monitoring, required by MCL 750.520b(2)(d), is both a cruel and unusual punishment under the United States Constitution and a cruel or unusual punishment under the Michigan Constitution. We disagree.

Whether lifetime electronic monitoring constitutes cruel or unusual punishment has been addressed and decided by this Court. See *People v Hallak*, 310 Mich App 555, 576-577; 873 NW2d 811 (2015), rev'd in part in other grounds by 499 Mich 879 (2016) (holding that "lifetime electronic monitoring is not cruel or unusual punishment."). This Court is required to follow the *Hallak* decision under MCR 7.215(C)(2).

But even if we were permitted to consider defendant's claim, we note that he did not preserve this claim by raising the issue in the trial court and so it must be reviewed for plain error affecting his substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800

(2013) (citation omitted). The constitutionality of a statute is a question of law that we review de novo. *People v Roberts*, 292 Mich App 492, 496; 808 NW2d 290 (2011).

The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel *and* unusual punishments inflicted." US Const, Am VIII (emphasis added); *People v Bullock*, 440 Mich 15, 27 n 8; 485 NW2d 866 (1992). The Michigan Constitution states, "Excessive bail shall not be required; excessive fines shall not be imposed; cruel *or* unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." Const 1963, art 1, §16 (emphasis added); *Bullock*, 440 Mich at 27 n 8.

Our Supreme Court in *Bullock* established a four-part test for determining whether a sentence was cruel or unusual under Michigan's Constitution: we must (1) weigh the gravity of the offense with the harshness of the penalty; (2) compare sentences imposed on other offenders in the same jurisdiction; (3) compare the sentences imposed for commission of the same crime in other jurisdictions; and (4) determine whether the sentence imposed furthers the goal of rehabilitation. *Bullock*, 440 Mich at 33-34 (citation and quotation marks omitted). A penalty that is unjustifiably disproportionate to the crime or unusually excessive should be struck down as cruel or unusual. *Id*. at 30. "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (citation and quotation marks omitted).

The facts in this case are certainly grave. Defendant perverted his fatherly role by bribing the victim with drugs, alcohol, and promises of marriage to assault her sexually for nearly a year. As if his behavior was not egregious enough, defendant prostituted the victim by inviting other men to engage in sexual intercourse with her. We have previously held that the crime of CSC-I "represents an act that has been historically viewed by society and this Court as one of the worst types of sexual assault," *People v Sabin (On Second Remand)*, 242 Mich App 656, 662-663; 620 NW2d 19 (2000), and that those crimes, when committed against minors, are "offense[s] that violate[] deeply ingrained social values of protecting children from sexual exploitation." *Benton*, 294 Mich at 206. As to the harshness of the penalty, the statutory maximum in Michigan for CSC-I is imprisonment for life, MCL 750.520b(2)(a), and defendant's three convictions in this case were subject to consecutive sentencing. MCL 750.520b(3). Lifetime electronic monitoring, which requires defendant to wear an ankle tether but allows him to travel, work, or otherwise move about the community, is obviously a lesser punishment than life imprisonment, and is certainly less so than *three consecutive* life sentences. This penalty is not unduly harsh considering the gravity of defendant's crimes.

As to the second prong of the test in *Bullock*, how the punishment in this case compares to other grave cases in Michigan, the punishment of lifetime electronic monitoring is only required for CSC-I and CSC-II convictions. MCL 750.520n. The defendant in *Hallak* was convicted of CSC-II, not the more serious crime of CSC-I like our defendant, and the Court rejected the exact constitutional challenge he makes here. *Hallak*, 310 Mich App at 577. And as discussed above, although defendant is required to submit to *lifetime* electronic monitoring, this does not exceed the maximum of life imprisonment for other heinous, capital crimes in Michigan such as murder, MCL 750.316 and MCL 750.317; armed robbery, MCL 750.529; carjacking, MCL 750.529a; kidnapping, MCL 750.349; arson, MCL 750.72. Further, the Legislature distinguished certain sex crimes from other capital crimes by identifying a specific societal

benefit to lifetime electronic monitoring:  to ensure that sex offenders would not be in a position to exploit children.  *Hallak*, 310 Mich App at 576-577.  Sentencing such defendants to lifetime electronic monitoring is not unjustifiably disproportionate given the nature of the crime, and so is not cruel or unusual punishment.

With regard to comparing sentences in other jurisdictions to those in Michigan for the same crime, as noted in *Hallak*, there are at least 10 other states that impose lifetime electronic monitoring for various CSC convictions, ranging from the most serious CSC convictions to those CSC convictions where the victim is a minor.  Clearly, this punishment is not unusual or unjustifiably disproportionate, given that mandatory lifetime electronic monitoring is considered necessary to prevent the offender from causing further injury to society.  *Id*. at 575-576.

Finally, because sex offenders are more likely to re-offend than other criminals, the goal of sentencing defendants to lifetime electronic monitoring is "to both punish and deter convicted child sex offenders and to protect society from a group known well for a high recidivism rate." *Id*. at 580.  Defendant has already demonstrated his proclivity for recidivism given that, in 1992, he pleaded guilty and was convicted of criminal sexual conduct against his then 13 year old step-daughter under circumstances remarkably similar to those in this case.   Therefore, because defendant has already proven himself to be a repeat offender, and also because the trial court in this case stated at sentencing that "the odds of rehabilitation…[were] minimal," we do not find that sentencing defendant to lifetime electronic monitoring is cruel or unusual punishment.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Thomas C. Cameron