*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LOUIS BARRY CURRIN,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 345560
Saginaw Circuit Court
LC No. 17-043732-FH

Before: BORRELLO, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant was convicted by a jury of possession of a firearm by a felon, MCL 750.224f(2), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of ammunition by a felon, MCL 750.224f(4). We affirm.

## I. BACKGROUND

At approximately 7:30 p.m. on February 21, 2017, Troopers Travis Pohl and Antonio Taylor saw defendant drive by with his plate lights out. Trooper Pohl pulled behind defendant, and defendant accelerated, ran through a stop sign, and eventually turned into his driveway. Defendant stepped out of his car and told the troopers that he did not have a license. The troopers handcuffed defendant and discovered that there was a warrant his arrest. The troopers informed defendant that he could post bond "rather than go to jail," and he told them that he had the money to do so, but would need to go inside his house to get it.

Defendant was the sole renter of the home, but he testified that his relatives frequently visited. Trooper Pohl removed defendant's handcuffs and told him that he could only go inside if Trooper Pohl went with him. Defendant opened the door with his key, held the door open for Trooper Pohl, and the trooper accompanied him inside. According to Trooper Pohl, as he was escorting defendant through the kitchen, defendant "proceeded to dive onto the stove," and Trooper Pohl "grabbed onto him and pulled him off the stove," at which time the trooper "heard a loud thud on the floor." Defendant testified that he did not jump on the stove, but instead reached on top of the refrigerator for his wallet and must have knocked over a pepper shaker. Trooper Pohl testified that defendant's diving onto the stove made it "crooked" and created a "gap between the

-1-

stove and the countertop[.]" In that gap, the trooper "could see the barrel of a pistol[.]" The troopers removed defendant from the home, and Trooper Taylor recovered the gun—an unregistered .22 caliber long-barrel pistol with a loaded magazine and a round in the chamber.

The troopers asked defendant if they could search the home, which defendant agreed to.[1] The troopers recovered a black bag wedged behind the counter, filled with ammunition of various calibers, and two .357 magnum rounds from on top of the refrigerator.

Defendant stated in an interview that he did not know the pistol was there, but he did know about the ammunition. While in jail, defendant made a call to an unknown female and stated that "they found the gun" and the ammunition and that he would "just tell them I didn't know it was there."

A jury convicted defendant as stated above, and defendant now appeals as of right.

## II. SEARCH OF DEFENDANT'S HOME

Defendant first argues that the trial court should have granted his motion to suppress the gun and ammunition because they were seized in an illegal warrantless search of his home. We disagree.

We review "for clear error a trial court's findings of fact regarding a motion to suppress evidence," and review de novo the trial court's ultimate decision to grant or deny the motion. *People v Echavarria*, 233 Mich App 356, 366; 592 NW2d 737 (1999).

The United States and Michigan Constitutions protect citizens against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A search conducted without a warrant is per se unreasonable unless an exception to the warrant requirement applies. *People v Borchard-Ruhland*, 460 Mich 278, 293; 597 NW2d 1 (1999).

Defendant argues that the initial search of his home was unreasonable because the troopers entered his home without a warrant. The prosecution argues that defendant consented to the initial search.

"Consent searches, when voluntary, are an exception to the warrant requirement." *People v Frederick*, 500 Mich 228, 242; 895 NW2d 541 (2017). "The voluntariness question turns on whether a reasonable person would, under the totality of the circumstances, feel able to choose whether to consent." *Id*. "Conduct itself can, under proper circumstances, be sufficient to constitute consent." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011) (quotation marks and citation omitted).

Under the totality of the circumstances, a reasonable person in defendant's position would have felt able to choose whether to consent to the troopers accompanying him into his home.

---

[1] After initially signing a consent form, defendant rescinded that consent, but later signed the consent form a second time after Trooper Pohl tried to contact a prosecutor.

Defendant wanted to go into his house to retrieve money to post bond. There is nothing in the record suggesting that the troopers encouraged defendant to make that decision. Indeed, defendant testified that he was the one that suggested that he go into his house to get the money. The troopers told defendant, however, that if he went into his home, a trooper had to accompany him for safety reasons. According to Trooper Pohl, defendant agreed. In fact, Trooper Pohl testified that defendant not only agreed to have Trooper Pohl accompany him into his home, but he held the door open for the trooper. This conduct by defendant manifested an intent to consent to Trooper Pohl's entering the home. See *People v Brown*, 127 Mich App 436, 442; 339 NW2d 38 (1983) (holding that unlatching and opening a door after police ask to come inside manifests consent for police to enter the home). Though defendant denied agreeing to allow the troopers to accompany him inside or to holding the door for Trooper Pohl, the trial court was tasked with judging the respective witnesses' credibility. It chose to credit Trooper Pohl's testimony. We defer to the trial court's superior ability to judge the credibility of witnesses that appear before it. *Roberts*, 292 Mich App at 503-504. We therefore conclude that defendant consented to Trooper Pohl's initial entry into his home, and thus the initial entry did not violate defendant's constitutional rights. See *Frederick*, 500 Mich at 242.[2]

The next question is whether the troopers properly seized the pistol in defendant's kitchen. "A seizure without a warrant may be valid under the plain-view exception to the warrant requirement where it is shown that (1) the incriminating character of the evidence was immediately apparent and (2) the police had a lawful right of access to the object." *People v Cooke*, 194 Mich App 534, 536; 487 NW2d 497 (1992). However, "[t]he police cannot manipulate an object in order to determine whether it is contraband; it must be immediately apparent from plain view . . . that the object is contraband." *People v Custer*, 465 Mich 319, 336; 630 NW2d 870 (2001).

Defendant argues that Trooper Pohl could not have clearly seen the pistol between the countertop and stove unless he manipulated the stove by pulling it away from the counter and looking behind it. However, Trooper Pohl testified that the pistol was clearly visible between the countertop and stove because defendant's diving onto the stove made it "crooked" and created a "gap between the stove and the countertop[.]" While defendant denied diving onto the stove, that was a factual dispute that came down to the respective witnesses' credibility. The trial court found Trooper Pohl to be more credible, and we defer to that finding. See *Roberts*, 292 Mich App at 503-504. Therefore, the pistol was in Trooper Pohl's plain view, and the troopers were able to lawfully seize the pistol under the plain-view exception to the warrant requirement.

Defendant lastly argues that he did not consent to the second search of his home. However, defendant signed a consent form giving the troopers permission to search his home the second time. Defendant argues that even if his signed consent form was valid, the evidence of the

_____

[2] Defendant argues that he only allowed the troopers into his home because he did not realize he could refuse. However, "knowledge of the right to refuse consent is not a prerequisite to effective consent," and is, instead, only one factor to determine whether consent was voluntary. *Borchard-Ruhland*, 460 Mich at 294. For the reasons explained above, we conclude that under the totality of the circumstances, defendant voluntarily consented to Trooper Pohl's accompanying defendant into his home.

ammunition seized by the troopers should be excluded because the initial entry was unlawful. For the reasons already explained, the initial entry into defendant's home and subsequent seizure of the pistol were lawful, so defendant's argument does not warrant relief.

### III. POSSESSION

Defendant next argues that the prosecution presented insufficient evidence to support his convictions. We disagree.

We review de novo a defendant's challenge to the sufficiency of evidence. *People v Kosik*, 303 Mich App 146, 150; 841 NW2d 906 (2013). We "must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* Any conflicts in evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

Defendant only argues that the prosecution's evidence was insufficient to establish that he was in possession of the gun and ammunition found in his home. Possession is an element of possession of a firearm by a felon, felony-firearm, and possession of ammunition by a felon. See MCL 750.224f(2); MCL 750.227b; MCL 750.224f(4).

"Possession" includes both actual and constructive possession. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.* (quotation marks and citations omitted).

Defendant argues that the prosecution did not establish possession because it did not show that defendant had the gun or ammunition on his person or that he had handled them. Defendant testified that multiple people visited the home, and he argues that it is reasonable to conclude that the firearm and ammunition belonged to someone else. However, defendant was the sole renter of the home, he had access to the gun in the kitchen, the gun visibly stuck out of the gap between the stove and the counter, and he conceded that he knew about the ammunition. Further, defendant's call from jail where he stated that "they found the gun" and that he would "just tell [the police] I didn't know it was there," indicated that he knew about the gun. There was also Trooper Pohl's testimony that defendant dove onto the stove when he was walking by it, after which Trooper Pohl "heard a loud thud on the floor," and looked down to see the gun on the floor by the stove. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that defendant knew about the gun and ammunition, and that defendant had reasonable access to them. Thus, the prosecution presented sufficient evidence for the jury to conclude that defendant constructively possessed the gun and ammunition. Because possession is the only element that defendant contends was not sufficiently supported, defendant is not entitled to relief on his insufficiency claim.

Affirmed.

/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron