# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 22, 2017

Plaintiff-Appellee,

v

No. 330113
Macomb Circuit Court
LC No. 2014-003317-FC

BELINDA DENISE JONES,

Defendant-Appellant.

Before: TALBOT, C.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right her jury conviction of second-degree murder, MCL 750.317, for which she was sentenced to 16 to 35 years in prison. We affirm.

## I. BASIC FACTS

Defendant's conviction arises from the stabbing death of James Williams. At trial, defendant testified that she was acting in defense of her son, who was fighting with Williams, and that she stabbed Williams as he was reaching for a knife. However, defendant gave inconsistent statements to the police before trial, claiming first that Williams had been attacked by several men whom she did not know, and later that she stabbed Williams because she had seen, or at least thought she saw, a knife in his waistband. The trial court instructed the jury on both self-defense and defense of others, but the jury found defendant guilty, as charged, of second-degree murder.

## II. SUPPRESSION OF CONFESSION

Defendant's first issue on appeal is that the trial court erred in denying her motion to suppress the statements in which she admitted to stabbing Williams. Defendant contends that she was in custody at the time she spoke to the police and that their failure to advise her of her *Miranda*[1] rights rendered her statements inadmissible. After conducting a suppression hearing, the trial court denied defendant's motion to suppress.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-1-

The trial court's ruling on a motion to suppress is reviewed de novo on appeal. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011). "Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). The trial court's factual findings regarding the circumstances surrounding the giving of the statement are reviewed for clear error. *Id*. A finding is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

Both the United States Constitution and the Michigan Constitution guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17; *People v Bassage*, 274 Mich App 321, 324; 733 NW2d 398 (2007). "*Miranda* warnings are not required unless an individual is subjected to custodial interrogation." *Roberts*, 292 Mich App at 504. A person is in custody where the "person has been formally arrested or subjected to a restraint on freedom of movement of the degree associated with a formal arrest." *People v Peerenboom*, 224 Mich App 195, 197; 568 NW2d 153 (1997). "Whether an individual is effectively 'in custody' is based on the totality of the circumstances," *Roberts*, 292 Mich App at 505, and "depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Cortez*, 299 Mich App at 691-692. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id*. at 694.

The trial court's ruling indicates that it accepted the testimony of the officers, Emerson and Gilbert, over that of defendant and her sister, whom it found to be incredible. The officers' testimony established that defendant was believed to have been involved in the fight, but was not a suspect in Williams's stabbing. Emerson's lieutenant contacted defendant to arrange a meeting, defendant consented to the meeting, and it was agreed that the meeting would take place at a McDonald's restaurant. Defendant arranged her own transportation to the meeting location. Defendant approached the detectives' car without being signaled, walked around to the driver's side of the vehicle, and spoke to Emerson through his open window. At the end of the interview, Emerson asked defendant if she would provide a written statement and she agreed. He handed her a pen and paper and she began to write. He then offered to let her sit in the car where it was warm and defendant accepted. Defendant sat in the backseat. The car was a standard-issue vehicle and was not equipped with any special restraints that would have prevented defendant from opening the door had she wanted to leave. Defendant admitted that she did not try to open the door and simply assumed it was locked. The officers did not speak to defendant while she was in the car writing her statement. After defendant completed her written statement, she got out of the car and went home with her sister. The entire episode lasted no more than one hour and defendant was not placed in handcuffs or told that she was under arrest. Given the totality of the circumstances, the trial court correctly determined that defendant was not in custody and thus her statements were admissible.

Defendant argues that the evidence presented at the hearing was insufficient to determine the issue because defense counsel alluded to her "limited intellectual capacity," but did not develop the issue sufficiently for the trial court to take it into consideration. We disagree. In *J D*

*B v North Carolina*, 564 US 261; 131 S Ct 2394; 180 L Ed 2d 310 (2011), the Court confirmed that a determination of custody is an objective analysis based on the totality of the circumstances, *id*. at 270-271, but held that, given the inherent differences between children and adults, a child's age is a factor that can be taken into account when the child's age is known to the officer at the time of questioning or "would have been objectively apparent to a reasonable officer[.]" *Id*. at 271-277. Defendant argues that, in light of that decision, other individual characteristics of the person questioned are also relevant to the determination of custody, such that evidence of her limited intellectual capacity should have been developed and considered. However, the majority decision in *J D B* specifically notes that its holding "neither invites consideration of whether a particular suspect is 'unusually meek or compliant,' . . . nor 'expan[ds]' the *Miranda* custody analysis . . . into a test that requires officers to anticipate and account for a suspect's every personal characteristic[.]" *Id*. at 275 n 7. But see *People v Braggs*, 209 Ill 2d 492, 510-511; 810 NE2d 472 (2004) (a defendant's mental retardation is a factor to be considered in determining whether the defendant was in custody).

In this case, defendant testified that she had a mental disability, but did not know the nature of the disability. While testimony at trial and the presentence investigation report (PSIR) indicated that defendant had been diagnosed with mental retardation and had a low IQ score, this Court's review is limited to "the information known to the trial court at the time it denied [the defendant's motion] to suppress." *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983). In any event, defendant presented no evidence to show that her mental disability impaired her ability to understand the circumstances surrounding the giving of her statement, nor did she show that her disability was known to the detectives or would have been objectively apparent to a reasonable officer. Even in the *Braggs* case, the court found that "the police knowingly exploited defendant's mental retardation." *Braggs*, 209 Ill 2d at 513. Accordingly, defendant's alleged mental disability is not a relevant consideration in this case.

## III. CONTINUANCE

Defendant next argues that the trial court erred by failing to grant a continuance after hearing that a defense witness was temporarily unavailable. This issue has not been preserved for appeal because defendant did not move for a continuance in the trial court. Therefore, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

A motion to adjourn trial must be based on good cause. MCL 768.2; MCR 2.503(B)(1). The court may grant an adjournment "on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCL 2.503(C)(2). Defendant may have been able to obtain a brief adjournment had she requested one, but she did not and "in the absence of a request for a continuance, a trial court should assume that a party does not desire a continuance." *People v Elston*, 462 Mich 751, 764; 614 NW2d 595 (2000). "A trial court has no duty to grant a continuance on its own motion," *People v Kvam*, 160 Mich App 189, 200; 408 NW2d 71 (1987), and "cannot be faulted for failing" to do so. *Elston*, 462 Mich at 765. Therefore, defendant has not shown any error, plain or otherwise.

## IV.  SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the jury's verdict is against the great weight of the evidence because the evidence was insufficient to prove that she did not act in self-defense or defense of another.  To the extent defendant challenges the legal sufficiency of the evidence, she need not take any action to preserve the issue, *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011), and we review it de novo on appeal.  *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007).  In reviewing a challenge to the sufficiency of the evidence, "this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006) (footnote omitted).  To the extent defendant challenges the great weight of the evidence, the issue has not been preserved for appeal because defendant did not raise the issue in a timely filed motion for a new trial in the trial court, *Williams*, 294 Mich App at 471, and we review it for plain error affecting defendant's substantial rights.  *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011).

To establish second-degree murder, the prosecution must prove "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Randy Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007).  A homicide is justified when it is done in self-defense. *People v Morrin*, 31 Mich App 301, 310; 187 NW2d 434 (1971).

Self-defense requires a finding that the defendant acted intentionally and that the circumstances justified the defendant's actions.  *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990).  A defendant may use deadly force to protect herself if she honestly and reasonably believed she was in imminent danger and that deadly force was necessary to prevent the harm.  MCL 780.972(1).  A defendant may use deadly force to protect herself under the following circumstances:  (1) the defendant honestly and reasonably believed that she was in danger, (2) the danger that she feared was sexual assault, serious bodily harm, or death, and (3) the action taken by the defendant appeared at the time to be immediately necessary, i.e., the defendant is only entitled to use the amount of force necessary to defend herself.  *Heflin*, 434 Mich at 502, 508-509; MCL 780.972; M Crim JI 7.15.

A defendant may use deadly force in defense of another.  *People v Kurr*, 253 Mich App 317, 321; 654 NW2d 651 (2002).  As with self-defense, the defendant must have honestly and reasonably believed that another person was in imminent danger and that it was necessary to use deadly force.  MCL 780.972; M Crim JI 7.21.  A defendant may use deadly force to protect another person under the following circumstances:  (1) the defendant honestly and reasonably believed that another person was in danger, (2) the danger that threatened the other person was sexual assault, serious bodily harm, or death, and (3) the action taken by the defendant appeared at the time to be immediately necessary, i.e., the defendant is only entitled to use the amount of force necessary to defend the other person.  M Crim JI 7.21.

Factors relevant to whether a person in a defendant's position could have an honest and reasonable fear of imminent harm include: (1) the condition of the people involved, including their relative strength; (2) whether the other person was armed with a dangerous weapon or had

some other means of injuring the defendant or the person she was protecting; (3) the nature of the other person's attack or threat; (4) whether the defendant knew about any previous violent acts or threats made by the other person. M Crim JI 7.15(4); M Crim JI 7.21.

The defendant has the initial burden of producing evidence of self-defense. *People v Reese*, 491 Mich 127, 155-156; 815 NW2d 85 (2012). Once the defendant meets this burden, "the prosecution bears the burden of disproving . . . self-defense beyond a reasonable doubt." *Id*.

The evidence, when viewed in a light most favorable to the prosecution, showed that Williams was irate over having been robbed and was looking for the people who had robbed him to get his money back. He armed himself with a long, stick-like object and possibly a knife. He ended up in front of defendant's house, where defendant was sitting on the porch. According to defendant, Williams made death threats. However, he never acted on those threats. Before he could do anything, Deangelo Jones tackled him and knocked him to the ground, other men joined in, and they assaulted Williams and disarmed him. Curtis Williams testified that defendant approached and stabbed James Williams after he had been disarmed. Evidence that James Williams was on the ground and unarmed when he was stabbed was sufficient to prove beyond a reasonable doubt that defendant did not have an honest and reasonable belief that she or her son were in imminent danger of serious harm or death. While defendant questions the credibility of Curtis Williams's testimony, "[w]itness credibility and the weight accorded to evidence is a question for the jury, and any conflict in the evidence must be resolved in the prosecution's favor." *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). "This Court will not interfere with the role of the trier of fact of determining the weight of the evidence or the credibility of witnesses." *People v Hill*, 257 Mich App 126, 141; 667 NW2d 78 (2003).

Because defendant's argument that the verdict was against the great weight of the evidence is tied to the sufficiency of the evidence regarding self-defense, and the evidence was sufficient to prove that defendant did not act in self-defense, we also reject any challenge based on the great weight of the evidence. *People v Brown*, 239 Mich App 735, 745-746, 746 n 6; 610 NW2d 234 (2000). Moreover, although defendant testified that she stabbed Williams once because he was reaching for his knife, she had previously told Emerson that she stabbed Williams only because she saw that he had a knife, not that he was wielding or even just reaching for it. None of the other witnesses could say how Williams came to be stabbed. Therefore, the evidence did not "preponderate[ ] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Thus, defendant cannot establish any plain error.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant lastly argues that she is entitled to a new trial due to ineffective assistance rendered by her first attorney and by her trial attorney. Because defendant did not raise this issue in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is "limited to mistakes apparent from the record." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014) (footnote omitted). To establish a claim of ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have

been different had it not been for counsel's error." *People v Frazier,* 478 Mich 231, 243; 733 NW2d 713 (2007).

Defendant argues that counsel was ineffective for failing to develop evidence of her "limited intellectual capacity" at the suppression hearing, failing to request a continuance so that a defense witness, Dr. Saad, could testify, and failing to file a motion for a new trial based on the great weight of the evidence. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey,* 237 Mich App 74, 76; 601 NW2d 887 (1999). The decision whether to file a motion for a continuance or a new trial is a matter of trial strategy as well. Cf. *People v Traylor,* 245 Mich App 460, 463; 628 NW2d 120 (2001) (the decision whether to file pretrial motions is a matter of trial strategy). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Rockey,* 237 Mich App at 76-77. However, the trial strategy must be sound, and "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg,* 493 Mich 38, 52; 826 NW2d 136 (2012). Therefore, counsel may still be found ineffective despite a strategic decision if the strategy employed was not a sound or reasonable one. *People v Dalessandro,* 165 Mich App 569, 577-578; 419 NW2d 609 (1988). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant,* 470 Mich 477, 486; 684 NW2d 686 (2004).

A. SUPPRESSION HEARING

Defendant argues that her first attorney was ineffective because he failed to develop evidence of defendant's "limited intellectual capacity" at the suppression hearing. "Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense." *People v Dunigan,* 299 Mich App 579, 589; 831 NW2d 243 (2013). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990).

The record shows that counsel was aware that defendant received Social Security benefits for a mental disability, given that he elicited such testimony from defendant at the suppression hearing. But the record contains conflicting information regarding the nature of defendant's intellectual capacity. The PSIR states that defendant was diagnosed with "mild mental retardation" in 2004 and that she was diagnosed with mental retardation in 2011, at which time she was found to have an "IQ score below 70." But during a criminal responsibility assessment in 2014, defendant's "presentation during the interview, her vocabulary use, verbal comprehension, and past educational attainment" led the examiner to conclude she "functions in at least the low average range of intellectual capabilities." Counsel objected to the competency evaluation, stating that the doctor who examined defendant did "a terrible job" because defendant had been seen by numerous physicians in the past and "has been diagnosed as having a lack of certain capacity." This indicates that counsel had investigated defendant's mental health history and was aware of her diagnoses, but not that those diagnoses were an accurate reflection of defendant's intellectual capacity at the time of the offense. Even assuming that defendant did have a limited intellectual capacity and thus counsel should have pursued the matter further, defendant has not shown that she was prejudiced by counsel's failure to do so. Because the test for determining custody is an objective one, it is not apparent from the record that the trial court

would have accepted defendant's argument that evidence of her limited intellectual capacity was relevant to the issue to be determined. And even if the court had found that the evidence was relevant, defendant has not shown that admission of the evidence would have resulted in a different outcome because there is nothing in the record to suggest that the police knew or should have known of her disability or that they exploited it. Therefore, the record does not show that counsel was ineffective for failing to develop the issue at the suppression hearing.

## B. CONTINUANCE

Defendant next argues that her trial attorney was ineffective because, after advising the trial court on Wednesday, September 2, 2015, that Dr. Saad, a defense witness, would not be available "until tomorrow afternoon," he did not request a continuance so that Dr. Saad could testify. Counsel's failure to file a motion can lead to a finding of ineffective assistance of counsel if the defendant shows that she would have prevailed on the issue raised in the motion. *People v Comella*, 296 Mich App 643, 652-653; 823 NW2d 138 (2012). The failure to request an adjournment until a witness can be located can constitute ineffective assistance of counsel if the witness could have offered "important exculpatory evidence" which, had it been offered, could have resulted in a different outcome. *Hodgson v Warren*, 622 F3d 591, 599-601 (CA 6, 2010). This is consistent with the law regarding counsel's decision whether to call a witness, which is that "[i]neffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian*, 171 Mich App 153, 159; 429 NW2d 615 (1988); see also *Dunigan*, 299 Mich App at 589.

Even if a continuance would have been warranted, defendant has not shown that she was prejudiced by counsel's failure to request one. Although defendant suggests that Dr. Saad may have provided evidence that Williams died from some intervening cause unrelated to his stab wounds, defendant has not made an offer of proof of Dr. Saad's proposed testimony and the record indicates only that Dr. Saad may have testified that Williams's stab wounds were not life-threatening at the time he was admitted to the hospital. The record does not indicate that Dr. Saad would have testified that Williams's injuries were not a proximate cause of his death. Because defendant has not established factual support for any claim that counsel's omission deprived her of important exculpatory evidence or a substantial defense, this claim must fail.

## C. MOTION FOR A NEW TRIAL

Defendant lastly argues that trial counsel was ineffective for failing to file a motion for a new trial based on the great weight of the evidence because the prosecution failed to prove that she did not act in self-defense or defense of another. As discussed in section IV, *supra*, whether defendant challenges the sufficiency of the evidence or the great weight of the evidence, her claim is without merit. "[D]efense counsel is not ineffective for failing to pursue a futile motion." *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008).

## VI. DEFENDANT'S STANDARD 4 BRIEF

Finally, defendant has filed an extensive pro per Standard 4 brief. This brief raises a number of arguments; many of these arguments, however, merely raise the same issues already addressed above and many merely present factual arguments appropriate to be made to a trier of

fact but are not legal arguments to be made on appeal. In any event, these do not provide any new reason to reverse defendant's conviction. Therefore, we will focus on those legal arguments raised by defendant that raise new issues not already addressed above.

First, defendant argues that the prosecutor made a number of statements inconsistent with the facts. But that is true only if we accept defendant's version of the facts. For example, defendant argues that the prosecutor erroneously said that there had been an altercation at the house when there was no altercation. But there was testimony about an altercation. Thus, defendant is merely disagreeing with the testimony that the prosecutor emphasized.

Next, defendant argues that the prosecutor failed to comply with the requirements of MCL 780.961(2) that the prosecutor must present evidence at the time of the warrant issuance, at the preliminary examination, and at trial that the defendant's actions were not justified under section 2 of the self-defense act, MCL 780.972. With respect to the first two requirements, this was rejected below and the jury rejected defendant's theory of self-defense. Even assuming that the prosecutor failed to present such evidence at the time of the warrant issuance or the preliminary examination, we are at a loss to determine what the appropriate remedy would be at this point. The requirement obviously is intended to prevent a defendant who has a claim of self-defense from having to go trial unless the prosecutor has sufficient evidence to defeat the claim of self-defense. But the trial has happened and we cannot relieve defendant of the burden of defending herself at a trial that has already happened. As for the requirement that evidence be presented at trial, that has happened and the jury rejected the claim of self-defense.

Defendant next argues that she was denied an expert witness regarding the victim's cause of death. But defendant only represents that she made the request informally, not through a motion, and that the denial was made off the record. More importantly, defendant does not point to any evidence to contradict the medical examiner's conclusion that the victim died from stab wounds. Part of defendant's argument focuses on the medical examiner not establishing who stabbed the victim, which of course is not the medical examiner's role. Defendant also suggests that the victim may have coincidentally died of some other underlying medical condition at the same time that he was stabbed. But defendant points to no evidence to seriously suggest that there was any basis to reach such an unlikely conclusion. Nor would any such evidence go to defendant's theory of the case that she acted in self-defense.

Defendant also argues that her statement should have been suppressed because the police failed to comply with the requirement of MCL 763.8(2) that statements in major felony cases be recorded. But that requirement only applies if the defendant is subject to custodial detention. And, as discussed above, defendant was not in custody at the time of the statement, so the recording requirement was not triggered.

Next, defendant argues that the trial court improperly instructed the jury on the duty to retreat before using self-defense. Defendant, however, points to no authority to establish that the instruction was erroneous.

Lastly, defendant argues that the jury was not impartial and that the selection of the alternate jurors was improper. But her only basis for the claim that the jury was biased is that they apparently agreed with evidence that defendant disagrees with. As for the process of

eliminating the alternate jurors, defendant's argument is little more than that she did not see the pulling of the names to select the alternates coupled with the unsubstantiated assertion that there was no random selection of alternates in order to ensure a conviction.

Affirmed.

/s/ Michael J. Talbot
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens