# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 27, 2018

v

No. 336246
Wayne Circuit Court
LC No. 16-003784-01-FH

JEFFREY JOHN RUTLEDGE,

Defendant-Appellant.

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of embezzlement of greater than $1,000, but less than $20,000, MCL 750.174(4)(a). Defendant was sentenced to one year of probation. We affirm.

## I. FACTS

This appeal arises out of the termination of an employment relationship between defendant and the co-owners of Workshop Detroit, Kevin Borsay and James Willer, in February of 2016. Workshop Detroit designs and builds custom furniture from reclaimed lumber removed from deconstructed homes throughout Detroit. In August 2015, Borsay and Willer hired defendant to work as a sales person in the Workshop Detroit showroom. Borsay and Willer testified that defendant was paid a salary, with an occasional small bonus. Defendant was provided with keys to the showroom, an iPhone 4, and a Microsoft Surface Pro III tablet computer. Willer testified that the iPhone 4 and the tablet were for use primarily in the showroom.

Willer testified that the iPhone 4 was a used phone that was previously his personal phone. He testified that the iPhone generally worked at the time he gave it to defendant, but that it had some functioning problems. He further testified that he did not know the value of the phone. He testified that he had purchased the tablet for the business for $1,149.99, plus additional amounts for the warranty, software, and tax, in approximately August, 2015. Willer also testified that there was customer contact information on the tablet that he valued at a minimum of $20,000.

On Tuesday, February 2, 2016, Willer fired defendant following an argument about defendant's competency. Willer testified that he fired defendant because defendant had

-1-

difficulty performing simple tasks and was not competent to do the sales job. Borsay testified that defendant was a "horrible employee" who displayed "erratic behavior." Willer testified that though he fired defendant on Tuesday, he and defendant agreed that day that if defendant, as an independent contractor, in the future brought sales to Workshop Detroit, Willer and Borsay would pay defendant a commission. Willer and Borsay testified that they told defendant to leave behind the showroom keys, the iPhone 4, and the Microsoft Surface Pro III tablet.

Defendant, however, kept the items and continued to come to work for the next two days. Willer testified that he was exasperated that defendant was still coming to the showroom when he was no longer employed there. On Thursday, Willer called defendant and asked him if the amount of $3,500 was acceptable to him as a final paycheck. Defendant rejected this amount, and Willer told defendant to leave the tablet, iPhone 4, and keys, and to vacate the showroom premises. On Friday morning, Borsay and Willer paid the "parting stipend" of $3,500 to defendant's bank account. Willer testified that the $3,500 paid to defendant was not a commission, but was instead a bonus based upon his six months of work prior to being fired.

Thereafter, defendant sent Borsay and Willer text messages indicating that he planned to return the iPhone, tablet, and keys on the following Monday and stating that he wanted to "square up" on that day. Willer testified that he received two phone calls from defendant on that Monday, but did not respond. Willer further testified that defendant knew that the Workshop Detroit showroom generally was not open on Mondays. Neither Borsay nor Willer met with defendant to receive the offered keys, iPhone, or tablet.

Raymond Alderson, an employee of Workshop Detroit, testified that on the Monday after defendant was fired, he was working in the business's factory area when he saw defendant, accompanied by another person that Alderson believed to be defendant's attorney. Defendant gave Alderson a business card and asked that Alderson give the card to Willer. Alderson testified that he later attempted to give the card to Willer, but that Willer did not accept the card.

Borsay testified that as a result of defendant keeping the tablet, Workshop Detroit lost the contact information for its customers, as well as project proposals, invoices, and estimates that had been on the tablet. According to Borsay, defendant also sent text messages to Borsay threatening to "trash" his name publicly. Borsay also received phone calls from clients and vendors informing him that defendant had been contacting them and identifying himself as the chief operating officer of Workshop Detroit. Willer then reported to police that defendant had stolen the iPhone and tablet. A warrant for felony embezzlement was issued, and this case resulted.

At trial, defendant presented a different version of events. Defendant testified that in August of 2015, defendant went into the Workshop Detroit showroom and inquired about working there. According to defendant, he was thereafter hired to be the "head of operations, essentially sales, marketing, management" for Workshop Detroit. Defendant testified that he was given the tablet and the iPhone to use in this role. Defendant's job duties included delivering completed pieces, making sales calls, being a jack-of-all-trades, and acting as the face of the business. According to defendant, he was expected and permitted to take the tablet and the iPhone with him and he constantly had them in his possession and used them to perform

work while away from the showroom. He also testified that he and Willer negotiated a commission-based salary in addition to a weekly wage of $400.

Defendant testified that he did not believe that he had been fired from Workshop Detroit, on Tuesday, February 2, 2016. After his argument that day with Willer, he spoke with Borsay, and then, believing that he was still employed there, continued working on Wednesday and Thursday, and even locked up the showroom after Borsay and Willer left on those days. Defendant denied that he was told to leave the iPhone, tablet, and keys in the showroom.

Defendant testified that at the time he ostensibly was fired, he believed that he was entitled to almost $10,000 in commissions from sales that he had made. When he learned that his employment had been terminated and that Borsay and Willer had only given him $3,500, he decided to keep the tablet, phone, and keys until they could "settle up." Defendant testified that he sent a text message to Borsay, telling him that they could "settle up" on Monday, at which point defendant would return the iPhone, tablet, and keys to the showroom. According to defendant, the following Monday he and his attorney drove to the showroom but could not locate Borsay or Willer, and neither man responded to telephone calls. Defendant testified that while attempting to locate Borsay or Willer, he left his attorney's business card with Alderson, who was working in the business's factory, and asked Alderson to give the card to Willer. Defendant testified that in the following weeks he continued to try to contact Borsay and Willer, and threatened a civil action against them for the unpaid commissions, but was unable to reach them. Defendant testified that it was his intention to give the tablet and the iPhone back to Borsay and Willer.

Defendant testified that he first became aware that Borsay and Willer still wanted the iPhone and tablet back when the Detroit Police called him regarding the outstanding warrant. Defendant turned himself in, and turned over the iPhone, tablet, and keys to his attorney, who delivered them to the police. Defendant initially testified that there was nothing important on the tablet or iPhone, and that he had been simply keeping them safe. However, on cross-examination, defendant admitted that the tablet contained a list of contracts that he believed to be crucial to his civil case against Borsay and Willer for nonpayment of outstanding commissions.

Defendant was convicted after a jury trial, and was sentenced to one year's probation. Defendant now appeals.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first makes two challenges to the sufficiency of the evidence supporting his conviction. We review challenges to the sufficiency of the evidence de novo. *People v Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331620); slip op at 2. In reviewing a challenge to the sufficiency of the evidence, we resolve all conflicts in the evidence in favor of the prosecution. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). In addition, circumstantial evidence and all reasonable inferences drawn from circumstantial evidence can constitute satisfactory proof of the crime. *Id.* We defer to the trier of fact's determination regarding what inferences may be drawn from the evidence presented, as well as

"the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Similarly, this Court will not disturb the trier of fact's credibility determinations. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

### 1. Intent to Defraud or Cheat

Defendant first contends that the prosecution failed to establish that defendant, at the time he took or converted the property, intended to "defraud or cheat" Borsay, Willer, or Workshop Detroit, and that therefore the prosecution failed to present sufficient evidence that defendant had the requisite intent to embezzle. We disagree.

Defendant was charged with embezzlement of property over $1000 but under $20,000 in value. Embezzlement by an agent or employee is prohibited under MCL 750.174 which provides, in relevant part:

(1) A person who as the agent, servant, or employee of another person, . . . fraudulently disposes of or converts to his or her own use, or takes or secretes with the intent to convert to his or her own use without the consent of his or her principal, any money or other personal property of his or her principal that has come to that person's possession or that is under his or her charge or control by virtue of his or her being an agent, servant, employee, trustee, bailee, or custodian, is guilty of embezzlement.

* * *

(4) If any of the following apply, the person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $10,000.00 or 3 times the value of the money or property embezzled, whichever is greater, or both imprisonment and a fine:

(a) The money or personal property embezzled has a value of $1,000.00 or more but less than $20,000.00.

This Court has explained that proof of embezzlement under MCL 750.174 requires proof of the following elements:

(1) the money [or personal property] in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money [or personal property] must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money [or personal property] to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal. [*People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016), quoting *People v Lueth*, 253 Mich App 670, 683; 660 NW2d 322 (2002).]

In this case, defendant argues that the prosecution failed to present sufficient evidence to establish that, at the time defendant took or converted the keys, iPhone, and tablet, he intended to

"defraud or cheat." At trial, both Willer and Borsay testified that they terminated defendant's employment on Tuesday, February 2, 2016, and at that time told defendant to leave the keys, iPhone, and tablet. Willer testified that by telephone on Thursday of that week, he again told defendant to leave the keys, iPhone, and tablet. Willer also testified that the iPhone and tablet were for use at the showroom and were not supposed to be in defendant's possession.

By contrast, defendant testified that the items had been provided to him by his employer for use in his employment and that he regularly took the items with him. He also testified that he had not believed that he had been fired on Tuesday, February 2, 2016, because after he and Willer argued, he spoke with Borsay and then continued to work on Wednesday and Thursday without further incident. Willer conceded that on Tuesday, he did agree with defendant that if defendant wanted to work as an independent contractor to bring business to Workspace Detroit, defendant would be paid a commission. Therefore, the evidence supports defendant's argument that when he retained possession of the keys, iPhone, and tablet on February 2, 2016, he may have believed he was still in a business relationship with Workspace Detroit and was authorized to have possession of the items.

The testimony also is in agreement that on either Thursday or Friday of that week, Willer again asked for the items to be returned, and defendant, although still disputing the amount he was owed, volunteered to return the items on the following Monday. The testimony further demonstrates that defendant, apparently together with his attorney, did in fact attempt to meet with Borsay and Willer on Monday, ostensibly to return the items. At trial, Borsay and Willer both acknowledged that they received defendant's message that he would return the property on Monday, yet neither Borsay nor Willer replied to this message nor made any effort to meet with defendant on that date to receive the property.[1] Considering that the evidence clearly demonstrates that defendant, upon receiving his final compensation payment on Friday, attempted to return the property on Monday, there is no indication that at that time defendant intended to cheat or defraud Borsay and Willer.

Evidence was introduced at trial, however, that thereafter defendant retained the items with the intent to defraud or cheat Borsay and Willer. There was testimony that defendant began to use the information in the tablet to contact the customers of Workshop Detroit and misrepresent himself as the business's chief operating officer, even though he knew by this time that he no longer had a relationship with the business. Defendant also admitted that he sometimes used the iPhone and tablet while retaining them, and believed that the information contained on the tablet was vital to his civil lawsuit against Borsay and Willer. Viewing this evidence in the light most favorable to the prosecution supports the conclusion that, although defendant initially may have justifiably believed that the items were in his possession with the consent of Willer and Borsay, defendant eventually knew that he no longer had permission to have the items, yet he retained them and used them with the purpose of cheating or defrauding Borsay and Willer.

---

[1] Instead, shortly thereafter Borsay and Willer filed a report with the Detroit Police alleging that defendant had unlawfully taken the property.

## 2. Fair Market Value

Defendant next contends that the prosecution failed to present sufficient evidence to establish that the keys, iPhone, and tablet had a fair market value of $1,000 or more. We disagree.

To prove embezzlement under MCL 750.174(4)(a), the prosecution must establish that the personal property embezzled had a fair market value of more than $1,000, but less than $20,000. Although MCL 750.174(4)(a) itself uses only the word "value," this Court has determined with respect to other criminal statutes, that the use of the general term value means "fair market value."[2] Michigan Model Criminal Jury Instruction 27.1, the instruction used for embezzlement, instructs trial courts to give the "Fair Market Value Test [found in] M Crim JI 22.1 . . . when applicable." M Crim JI 27.1 n 4. M Crim JI 22.1 provides:

> (1) The test for the value of property is the reasonable and fair market value of the property at the time and in the area of the [embezzlement].

> (2) Fair market value is defined as the price the property would have sold for in the open market at that time and in that place [if the following things were true: the owner wanted to sell but did not have to, the buyer wanted to buy but did not have to, the owner had a reasonable time to find a buyer, and the buyer knew what the property was worth and what it could be used for].

In this case, when viewed in a light most favorable to the prosecution, the evidence presented was sufficient to establish that the fair market value of the personal property embezzled by defendant was greater than $1,000. Willer testified that he purchased the tablet new from Costco in August 2015, and paid $1,149.99, plus additional amounts for an extended warranty, software, and tax. Although there was some suggestion in the testimony that the tablet was no longer worth as much in February 2016, no evidence was presented that its value had diminished below $1,000. Detective Ronan testified that his research caused him to determine that the replacement value of the tablet on an insurance database was greater than $1,000. Defendant had also retained possession of the business's iPhone 4, which presumably had a fair market value, though none was specifically established at trial. Further, Willer testified that he valued the business contact information on the tablet at at least $20,000.[3] We therefore conclude

---

[2] For example, this Court has stated that with regard to a general valuation rule in the context of the larceny statute, that "[w]hile the larceny statue itself does not provide a guide for determining the value of property which is the subject of a theft, case law supports the use of fair market value as the relevant standard when such a value exists." *People v Pratt*, 254 Mich App 425, 428-429; 656 NW2d 866 (2002), quoting *People v Johnson*, 133 Mich App 150, 153; 348 NW2d 716 (1984).

[3] Generally, the owner of personal property is considered qualified to testify as to the value of that property, if the testimony does not relate to the personal, sentimental, or subjective value of that property to the owner. *Pratt*, 254 Mich App at 429; *Brown*, 179 Mich App at 133-134. We

that, viewing the evidence in the light most favorable to the prosecution, sufficient evidence was presented from which the jury could have concluded that the fair market value of the items converted was at least $1,000.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that he was denied effective assistance of counsel at trial. Defendant argues that defense counsel at trial (1) elicited highly prejudicial testimony from defendant on direct examination, and (2) called a witness who then presented unfavorable testimony. We disagree that defendant was denied effective assistance of counsel at trial.

Initially, we note that this claim is unpreserved. To preserve a claim of ineffective assistance of counsel for appellate review, a defendant must move for a new trial,[4] or request a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in the trial court. *People v Solloway*, 316 Mich App at 188. Our review of defendant's unpreserved claim of ineffective assistance of counsel, which is a mixed question of fact and constitutional law, "is limited to mistakes apparent on the lower court record." *Id*.

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is defendant's burden to prove "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188 (citation omitted). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Further, "defendant has the burden of establishing the factual predicate for his claim[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel's questioning led to defendant testifying that at the time he began working at Workshop Detroit, he was living out of his truck, was showering at the gym, and was lucky on occasion to sleep at a friend's house. Defendant argues that this testimony allowed the jury to improperly consider highly prejudicial testimony regarding defendant's poverty and unemployment in determining his guilt.

Generally, evidence of poverty and unemployment is inadmissible because the probative value of such testimony is substantially outweighed by the danger of unfair prejudice. *People v Stanton*, 97 Mich App 453, 460; 296 NW2d 70 (1980). In this case, however, defense counsel did not elicit this testimony from defendant; rather, defendant volunteered the information. On

---

would also note, however, that it is difficult to say with any confidence what, if any, fair market value existed for customer data unique to this particular business.

[4] Defendant did move before the trial court for a new trial, but not on grounds of ineffective assistance of counsel.

direct examination, defense counsel asked defendant where he was living in August of 2015, before beginning his employment with Workshop Detroit. Defense counsel apparently was attempting to elicit testimony that defendant was in the process of moving to Detroit, which sets up defendant's subsequent testimony regarding how he became involved with Workshop Detroit after admiring its work product in a display window. In response, however, defendant stated that he would prefer to begin his testimony by going back to July of 2015, and at that time, he was "temporarily" living out of his truck because his girlfriend had kicked him out of the apartment they shared. Thus, it was defendant, not defense counsel, who suggested beginning his testimony in July of 2015, rather than August of 2015, and then provided a narrative suggesting poverty and unemployment.

In any event, decisions about what questions to ask a witness are considered matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and this Court "will not second-guess defense counsel's judgment on matters of trial strategy," *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Further, defendant fails to articulate how, absent the testimony that suggests he was living in poverty and was unemployed, the outcome of his trial would have been different. *Solloway*, 316 Mich App at 188. His claim is therefore without merit.

Next, defendant argues that defense counsel provided deficient representation by listing as a witness Patricia Howard, a security guard employed in the building where Workshop Detroit is located, without interviewing her before trial. Defendant and defense counsel apparently hoped that Howard would testify that on the Monday after he was fired, defendant attempted to return the keys, iPhone, and tablet, and in fact briefly put the items on the security desk. Prior to calling Howard as a witness, however, defendant and defense counsel spoke with Howard outside the courtroom and learned that she was not the security guard working on the day in question. Defense counsel therefore dismissed Howard as a witness. The prosecution, however, then called Howard as a witness, and elicited testimony from Howard that defendant had spoken with her in the hallway during trial, and had asked her to testify that he had attempted to give her the tablet and iPhone the Monday after he was fired, even though that had not occurred.

To succeed in his claim of ineffective assistance of counsel, defendant must "overcome the strong presumption that defense counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Here, defense counsel subpoenaed Howard as a witness, apparently believing that Howard could testify that defendant had attempted to return the keys, iPhone, and tablet on the Monday after being fired. Surely, defendant himself must have known whether this was true, or, assuming that defendant could not remember which security guard was on duty that day, defendant must have known that it was possible that Howard would testify that it was not her. Moreover, defense counsel did not call Howard, and Howard's own testimony confirms that defense counsel interviewed her prior to her testimony and chose not to call her. Based on the foregoing, defendant has not established the factual predicate for his claim, specifically, that defense counsel failed to interview Howard as a witness prior to her testimony at trial. *Hoag*, 460 Mich at 6.

## C. SEQUESTRATION OF WITNESSES

Lastly, defendant contends that a sequestration order given by the trial court was violated, and that the trial court therefore was obligated to declare a mistrial. In defendant's Standard 4[5] brief, he argues that witnesses in the prosecution's witness room were able to hear what was going on in the courtroom and that the trial court's sequestration order was therefore effectively violated. We disagree.

A trial court has discretion to order the sequestration of the witnesses, and also discretion, when a sequestration order is violated, to exclude or allow the testimony of the offending witness. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011). We review a decision regarding the remedy for a violation of a sequestration order for an abuse of discretion. *Id*. A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Solloway*, 316 Mich App at 191-192.

Here, the trial court issued a sequestration order on the second day of trial, before the start of testimony. On the third day of trial, it was brought to the trial court's attention that a defense witness had made his way into the prosecution's witness room, and claimed that from that location he could hear everything going on in the courtroom during trial. The trial court then took testimony, outside the presence of the jury, from the defense witness in question, which the trial court did not find credible. The trial court also learned through the testimony of the courtroom deputy that the witness had entered the prosecution's witness room without permission, and had himself broken the sequestration order at least three times by coming into the courtroom during trial. Based on the foregoing, the trial court did not abuse its discretion by declining to declare a mistrial in this matter based on the assertions of a witness the trial court found not credible.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[5] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.