*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 10, 2023

v

No. 362207
Berrien Circuit Court
LC No. 1996-504416-FC

ALLAN GENE-REEDER MARTIN, JR.,

Defendant-Appellant.

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right a trial court order resentencing defendant to 40 to 70 years' imprisonment pursuant to *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190, 212; 136 S Ct 718; 193 L Ed 2d 599 (2016). On appeal, defendant contends that the trial court abused its discretion when it emphasized defendant's juvenile criminal record as reason not to sentence defendant to the requested minimum sentence of 30 years' imprisonment. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 1996, defendant drove with his friend, Michael Schramm, to Piedt & Sons Gun Shop in Benton Township, Michigan. Both defendant and his friend were 17 years old and could not legally purchase guns. Defendant entered the store carrying a loaded, .25-caliber, semiautomatic pistol tucked into his pants pocket. Defendant and Schramm planned to steal a pistol hanging behind the counter. Defendant spoke with Darrell Piedt, the owner of the store, who was seated behind the counter. Defendant intended to distract Piedt so that Schramm could sneak behind the counter to take the pistol. Defendant and Schramm stayed in the store for several hours. During his conversation with Piedt, defendant took the gun out of his pocket and asked Piedt if he could improve the gun's appearance. Piedt commented that defendant looked like a gang member and was too young to carry a gun. Piedt started to bend down. Believing that Piedt was moving to call the police, defendant held the gun against Piedt's forehead and shot him. Piedt died of the gunshot wound. Defendant and Schramm stole guns and ammunition before walking out of the store.

-1-

Defendant was convicted by jury in 1997 of first-degree felony murder, MCL 750.316; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was originally sentenced to life without parole (LWOP) for first-degree felony murder and two years' imprisonment to be served consecutive to and preceding his life sentence for his felony-firearm conviction.

Subsequently, the United States Supreme Court held in *Miller*, 567 US at 465, "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " Shortly thereafter, the Supreme Court held that "*Miller* announced a substantive rule that is retroactive in cases on collateral review." *Montgomery*, 577 US at 206.

The Michigan Legislature enacted MCL 769.25 and MCL 769.25a to provide trial courts with procedures to carry out *Miller* resentencing hearings. In this case, the prosecution requested that defendant be resentenced to LWOP pursuant to MCL 769.25a(3). Under MCL 769.25a, the resentencing court makes "the determination of whether a sentence of imprisonment shall be imprisonment for life without parole eligibility or a term of years as set forth in section 25(9)." As incorporated by MCL 769.25a(3), in instances when the trial court determines that defendant will not be resentenced to LWOP, the trial court shall "sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25(9).

In this case, after holding a three-day *Miller* hearing, the resentencing court decided to resentence defendant to a term of years instead of LWOP. After the *Miller* hearing, the trial court placed its findings under the *Miller* factors on the record and described the circumstances of defendant's offense.

At resentencing, the trial court sentenced defendant to 40 to 60 years' imprisonment for his first-degree, felony-murder conviction. Defendant was not resentenced for his felony-firearm conviction because he already completed that sentence. In support of its holding, the trial court explained that it previously applied the *Miller* factors to determine that it would not resentence defendant to LWOP. Noting that it did not need to rehash its holding after the *Miller* hearing, the trial court addressed defendant's postconviction conduct. The trial court explained that defendant went through periods of incarceration in which he did very well, but he also had periods when he did the wrong thing. Defendant started out prison on a positive note for several years before becoming involved with the Latin Kings gang. After his involvement with the Latin Kings ended, defendant had an eight-year stretch without violations, followed by some backsliding for assaultive conduct. However, in the past five years, defendant did not have any violations. Defendant also renounced his affiliation with the Latin Kings.

The trial court juxtaposed defendant's postconviction behavior with his lengthy record before he was incarcerated. Despite being only 17 years old, defendant had a significant record leading up to his conviction, including breaking and entering, assault, incarceration, and probation. The trial court also discussed defendant's gun involvement before the instant offense. Defendant stole his parents' gun and had a reputation for carrying a gun. Defendant was convicted of discharging a weapon at a building. Defendant was on probation for that shooting when he murdered Piedt.

The trial court also discussed the circumstances of Piedt's murder. Defendant entered that store for an illegal purpose, whether it was purchasing a gun as a minor or stealing from the gun store. The trial court described defendant's plans with Schramm as a recipe for disaster.

Finally, the trial court recognized that defendant's rehabilitation was ongoing and that these other considerations must be balanced against his rehabilitation. The trial court sentenced defendant to 40 to 70 years' imprisonment and concluded: "This is a crime that, regardless of the other things that I found in deciding in the *Miller* portion of the hearing, calls out for punishment. You understand it. Everybody understands that here. There's no getting around that."

Defendant now appeals his sentence.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to resentence a juvenile lifer for an abuse of discretion. *People v Skinner*, 502 Mich 89, 138; 917 NW2d 292 (2018). "A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principled outcomes," *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011), or when it makes an error of law, *People v Parlovecchio*, 319 Mich App 237, 240; 900 NW2d 356 (2017). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

## III. RESENTENCING

Defendant contends on appeal that the trial court abused its discretion when it imposed a 40-year minimum sentence for defendant's murder conviction. Defendant argues that the trial court impermissibly placed emphasis on defendant's criminal record leading up to his felony murder conviction as reason not to sentence defendant to 30 to 60 years' imprisonment. In support of this assertion, defendant explains that the trial court ran afoul of *Miller* when it used defendant's criminal activity from his youth as an aggravating factor. We disagree.

As stated earlier, the United States Supreme Court determined "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 US at 465. The Court explained that "children are constitutionally different from adults for purposes of sentencing" in the context of LWOP for homicide offense and mandatory LWOP makes "youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence." *Id*. at 471, 479. To take account of a defendant's age, the *Miller* Court set forth factors for a sentencing court to consider when sentencing a juvenile defendant LWOP:

> (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies

-3-

of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation." [*People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022), quoting *Miller*, 567 US at 477-478.]

The trial court must make its decision on the basis of these factors when deciding if a minor should be sentenced to LWOP. *People v Wines*, 323 Mich App 323 Mich App 343, 348; 916 NW2d 855 (2018), rev'd on other grounds 506 Mich 954 (2020). All the *Miller* factors are mitigating factors, not aggravating factors in this context. *Taylor*, 510 at 139 n 25. If a particular factor does not favor a defendant, that factor will be considered neutral. *Id.*

Youth and its attendant circumstances must also be considered when a juvenile offender is sentenced to a term of years. *People v Boykin*, 510 Mich 171, 188; 987 NW2d 58 (2022). However, the resentencing court does not need to specifically make findings as to the *Miller* factors when the defendant is sentenced to a term of years. *Id.* at 190. Instead, Michigan caselaw focuses on the principle of proportionality when imposing a sentence, "which requires sentences imposed to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id.* at 188 (quotation marks and citation omitted). The trial court has a "duty to exercise discretion in a way that ensures the individualized sentence conforms with the principle of proportionality." *Id.* at 183.

In place of sentencing guidelines, the sentencing court should be guided by balancing the objectives in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). *Boykin*, 510 Mich at 192-193. The *Snow* objectives that the resentencing court should balance include: "(1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *Wines*, 323 Mich App at 351. These objectives are not the only relevant sentencing criteria. *People v Broden*, 428 Mich 343, 350; 408 NW2d 789 (1987). MCL 769.25a does not specify any particular factors or considerations for a trial court to apply when resentencing a juvenile lifer. *Boykin*, 510 Mich at 191. However, trial courts must consider the mitigating qualities of youth consistent with the traditional penological goals in *Snow* when resentencing a juvenile lifer. *Id.* at 192-193.

The Michigan Supreme Court explained the manner in which youth transforms the *Snow* analysis:

For example, since a greater possibility exists that a minor's character deficiencies will be reformed, the mitigating qualities of youth necessarily transform the analysis of the first Snow criterion. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a heightened capacity for change relative to adults, the needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, Snow's focus on discipline of the wrongdoer must be viewed differently under the lens of

youth. Nor can deterrence do the work in this context, because the same characteristics that render juveniles less culpable than adults . . . make them less likely to consider potential punishment. Given that youth is a mitigating factor, it will inevitably factor into Snow's four considerations. [*Id*. at 188-189 (quotation marks and citations omitted; alteration in original).]

A defendant's criminal record is not an express *Miller* factor. See *Taylor*, 510 Mich at 126. However, the *Miller* factors are not the only consideration that the trial court can consider at resentencing. The objectives of sentencing still apply when a trial court resentences a juvenile defendant to a term of years. The trial court must still sentence a defendant proportionate to the circumstances surrounding the offense and the offender. See *Boykin*, 510 Mich at 188. Accordingly, the trial court considers the *Snow* objectives to craft a proportionate sentence. *Wines*, 323 Mich App at 351. Youth necessarily impacts this analysis, *Boykin*, 510 Mich at 188-189, but this consideration does not prevent the trial court from considering a defendant's juvenile criminal record. Therefore, the trial court, in crafting an individualized sentence, necessarily addressed defendant's criminal record, as his criminal record bears on at least two *Snow* objectives: reformation and discipline of the offender. The trial court fulfills its mandate when it considers youth consistent with the traditional penological goals in the *Snow* objectives. *Id*. at 192-193.

At the resentencing hearing, the trial court focused on reformation and discipline of the offender. Within its analysis, the trial court addressed youth's impact on the sentence. As a preamble to the trial court's sentencing decision, the trial court noted that it already applied the *Miller* factors in an extensive ruling and would not go back through its ruling. Addressing the *Snow* objectives, the trial court first acknowledged defendant's efforts at reformation during his imprisonment. The trial court explained that defendant had both ups and downs on his journey to reformation. The trial court credited defendant for starting his sentence out on a positive note for several years. However, after several years, defendant got involved with the Latin Kings gang and engaged in misconduct. This was followed by defendant's renouncement of gang membership and another eight-year stretch without violations. Again, defendant backslid with assaults, but he did not have violations in the past five years. The trial court acknowledged that defendant was generally doing better and that his prison record was impressive compared to other cases before the trial court.

The trial court directly contrasted defendant's mostly positive reformation with defendant's lengthy criminal record. Within its analysis of defendant's criminal record, the trial court acknowledged that defendant was a minor when defendant developed a criminal record. The trial court recognized that defendant was just 17 years old when he committed felony murder. Before defendant committed this murder, defendant had an extensive criminal record and experience with the criminal justice system. Defendant was on probation when the instance offense occurred, and he had already experienced incarceration, but he continued to involve himself in gun violence.

The trial court alluded back to its analysis of defendant's criminal record at the earlier *Miller* hearing when it determined that the fourth *Miller* factor—whether the defendant might have been charged with, and convicted of, a lesser offense, if not for the incompetence associated with youth, inability to deal with police officers, prosecutors, or his own attorney—was neutral. In that context, the trial court determined that defendant displayed a level of sophistication when dealing

with the legal system because he had an extended criminal record, was interviewed by police five times, had been incarcerated, and was on felony probation.

The trial court's analysis of defendant's criminal history evoked his analysis of the fourth *Miller* factor. Defendant was a minor when he committed the instant offense and the other convictions in his criminal record, but his actions did not evince the hallmarks of youth such as impetuousness. Instead, defendant's criminal record and the circumstances of the offense demonstrated planning before engaging in criminal conduct.

The trial court further emphasized this point when it addressed the underlying offense in this case. The trial court explained that a judge had warned defendant not to have a weapon when he was on felony probation. Despite the judge's warning and defendant's knowledge that he was on felony probation, defendant entered the gun shop for an illegal purpose and senselessly shot Piedt. The trial court emphasized that defendant entered the gun shop with an illegal purpose pursuant to a plan that defendant developed before ever walking through the door.

The trial court concluded that it must contrast defendant's reformation with the circumstances of the offense. The trial court agreed that defendant was in the process of rehabilitation but noted that the underlying crime called out for punishment. After reviewing the sentencing transcript, it is apparent that the trial court considered defendant's youth in relation to the *Snow* objectives. The trial court was cognizant that defendant had reformed to some extent during his incarceration. The trial court balanced this consideration against the circumstances of offense and offender. See *Boykin*, 510 Mich at 183. The trial court did not abuse its discretion when it sentenced defendant to 40 to 70 years' imprisonment. Accordingly, there was no error, and defendant is not entitled to resentencing.

Affirmed.


/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-6-